Rona FIELDS, Plaintiff, Appellee,

v.

CLARK UNIVERSITY,
Defendant, Appellant.

Rona FIELDS, Plaintiff, Appellant,

v.

CLARK UNIVERSITY,
Defendant, Appellee.

Nos. 86–1989, 86–2036.

United States Court of Appeals,
First Circuit.

Heard April 7, 1987.
Decided May 8, 1987.

John O. Mirick with whom Joseph M. Hamilton and Mirick, O'Connell, DeMallie & Lougee, Worcester, Mass., were on brief for Clark University.

Christine L. Owens with whom Winn Newman and Newman, Sobol, Trister & Owens, Washington, D.C., were on brief for Rona Fields.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

In this opinion we consider both the plaintiff's and defendant's appeals from a district court order in a suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e–17 (1982). The court found that the process by which plaintiff was denied tenure at Clark University was tainted with sexual discrimination. It did not order that she be granted tenure, however, because the court also found that she failed to prove she was so entitled. It ordered that plaintiff be reinstated for a two-year probationary period and then reconsidered for tenure, and awarded her back pay, attorney's fees, and costs. We hold that the court erred in its allocation of the burdens of proof, and, therefore, vacate the court's order and remand the case for a new trial.

## I. BACKGROUND

In 1972, Clark University hired Rona Fields as a full-time associate professor in the sociology department. She was considered for tenure after her second year of teaching. At the initial stage of the review process, six members of the sociology department, all male, voted unanimously to recommend that she not be given tenure. Fields contested this decision. She submitted additional materials on her own behalf at subsequent meetings, but on review the members of the department unanimously affirmed their decision, and the president of the university was notified of the outcome.

The departmental vote was referred to the committee on personnel, which is charged with advising the university's president on evaluations of the faculty's professional credentials. The committee reviewed the file on which the faculty relied, which was supplemented by materials Fields submitted. It also obtained additional student evaluations of her teaching. The committee voted twice—each time unanimously—to accept the faculty's recommendation, and it forwarded this decision to the board of trustees. The committee denied a request for reconsideration by Fields.

On May 9, 1975, the board of trustees voted to give Fields a one-year terminal appointment ending August 31, 1976. She asked the university to form a faculty review committee to examine the decision, alleging a number of procedural irregularities and charging sexual bias. Such a committee was appointed in June 1975; it convened in January 1976 and held a number of meetings. It reported that there was no evidence Fields was denied tenure because of sexual bias, and concluded that the sociology department, the committee on personnel, and the board of trustees had adequately considered her case.

Fields filed charges with the Equal Employment Opportunity Commission and the Massachusetts Commission Against Dis-

crimination, claiming that the tenure decision constituted unlawful discrimination. The Equal Employment Opportunity Commission found reasonable cause to believe the allegations and issued a right to sue letter. Fields subsequently instituted this action in district court.

The allegations of sexual discrimination focused on the all-male sociology department. According to Fields, the members of the department subjected her to "a continuous course of sexual harassment, sexual innuendo and denigration of her professional status." She claims an associate professor who had just been awarded tenure made sexual advances toward her, and when she rejected them, he warned that her refusal "was no way to get tenure." This associate professor later participated in the departmental vote recommending that Fields be denied tenure.

The university, on the other hand, claims that the sociology department's negative recommendation, and the university's decision not to grant Fields tenure, were made because she was a poor teacher. To substantiate its claim, the university relied principally on student evaluations and the comments of other professors, some solicited by Fields, which criticized her teaching.

After a nonjury trial, the district court found that the sociology department "was generally permeated with sexual discrimination of which the plaintiff was in fact a victim." It did "not find any evidence of improper bias in the subsequent review procedure or on the part of the ultimate deciding authority, the board of trustees." It concluded that the departmental recommendation "was the most significant step in the tenure process," and that she had "proved by a preponderance of the evidence" that the sociology department's sexual bias rendered the tenure decision "impermissibly infected with sexual discrimination, and accordingly, she is entitled to relief under Title VII."

The court also said, however, that Fields had "not proved that on this record she is entitled to tenure." It found that "the record raises substantial questions as to the plaintiff's capacity as a teacher." It noted testimony that student evaluations of her teaching were unusually negative. There was evidence that a female tenured faculty member said she could not recommend that Field be granted tenure. The female dean of women also gave a negative recommendation, and she reported many complaints about the way Fields taught. The court ordered the university to reinstate Fields for a two-year probationary period and to reconsider her for tenure afterward "under circumstances free of sexual discrimination." She was also awarded $25,000 back pay and $75,697.72 in attorney's fees and costs.

Fields argues that the court misallocated the burdens of proof. According to her, she was entitled to reinstatement with tenure and full back pay. She also claims the court erred in reducing the hourly rate at which her lead counsel's attorney's fees were computed. The university cross-appeals, also claiming that the burdens of proof were incorrectly applied and that it was entitled to a verdict. Additionally, the university claims that the court erred by allowing an associate professor, who was hired in the sociology department after Fields left, to testify about sexual harassment occurring four years after Fields was denied tenure. Lastly, Clark alleges that the damage award and the computation of attorney's fees were flawed in various respects.

## II. BURDENS OF PROOF

Fields claims the court's ruling that the tenure decision was "impermissibly infected with sexual discrimination" meant that she carried her burden of persuasion. She argues that the burden then shifted to the university to prove that, even if there had been no discrimination, she would not have been granted tenure. The university claims that the burden of persuasion remained at all times on Fields, and that the court's conclusion that she failed to prove she was entitled to tenure required a defendant's verdict.

■ Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin in hiring and with respect to the privileges and conditions of employment. 42 U.S.C. § 2000e–2(a). A plaintiff does not have to present direct proof of discriminatory motive to prevail in a Title VII suit. A plaintiff can establish a prima facie case of discrimination if she "prove[s] by a pr[e]ponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The Supreme Court set out the order and allocation of the burdens of proof for such a case in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093 (citations omitted) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979)[1]). When an adverse employment decision has been made under circumstances that raise an inference of discriminatory treatment, the employee is entitled "to an explanation from the defendant-employer for whatever action was taken." *Loeb v. Textron, Inc.*, 600 F.2d at 1014. This court has applied the *McDonnell Douglas* approach in a line of Title VII cases arising in an academic setting. *See, e.g., Kumar v. Board of Trustees, Univ. of Mass.*, 774 F.2d 1, 9 (1st Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1496, 89 L.Ed.2d 896 (1986); *Banerjee v. Board of Trustees of Smith College*, 648 F.2d 61, 63 (1st Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *Sweeney v. Board of Trustees of Keene State College*, 604 F.2d 106, 108 (1st Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980).

■ The burden of proving a prima facie case can be met "by showing that a qualified applicant, who was a member of a [protected class], had unsuccessfully sought a job for which there was a vacancy and for which the employer continued thereafter to seek applicants with similar qualifications." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 357–58, 97 S.Ct. 1843, 1865–66, 52 L.Ed.2d 396 (1977); *McDonnell Douglas*, 411 U.S. at 802. The district court did not rule specifically on whether Fields made out a prima facie case under the *McDonnell Douglas* approach. To show that she was qualified for tenure and satisfy the second step of the prima facie case, Fields must have shown that her qualifications were such that a decision granting tenure would have been a reasonable exercise of discretion. *Banerjee v. Board of Trustees of Smith College*, 648 F.2d at 62–63. Even if Fields did so, "[t]he burden on the defendant is only to rebut the plaintiff's prima facie case; the burden of persuasion rests at all times with the plaintiff." *Holden v. Commission Against Discrimination*, 671 F.2d 30, 35 (1st Cir.), *cert. denied*, 459 U.S. 843, 103 S.Ct. 97, 74 L.Ed.2d 88

---

1. *Loeb v. Textron, Inc.*, was based on a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1982 & Supp. III 1985); but the *McDonnell Douglas* test is followed to the same extent under that statute as under 42 U.S.C. § 2000e–2(a).

(1982). The defendant need only "articulate some legitimate, nondiscriminatory reason" for its decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The university articulated such a reason—poor teaching—and produced evidence, chiefly in the form of student evaluations and faculty recommendations, to substantiate it. Under *McDonnell Douglas,* the burden would then be on Fields to prove by a preponderance of the evidence that this reason was a mere pretext for sexual discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. The district court did not go through this analysis, and it is unclear what its finding would have been on the question of pretext, for while the court found that "the record raises substantial questions as to the plaintiff's capacity as a teacher," the court also found that "two male faculty members with poor teaching evaluation, ... one with less scholarly achievement than the plaintiff, were accorded tenure after a favorable vote from the department."

The question here, however, is not how *McDonnell Douglas* should be applied, but whether it should be applied at all. The court did not grant a verdict for the defendant because it found "strong evidence of a pervasively sexist attitude on the part of the male members of the sociology department." If this meant Fields had proved by direct evidence that sexual discrimination was a motivating factor in the decision to deny her tenure, the court was correct in not following the *McDonnell Douglas* test. It erred, however, in its subsequent rulings.

The Supreme Court has instructed that the shifting burdens of proof set forth in *McDonnell Douglas* are "inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. at 121, 105 S.Ct. at 622; *see also Goodman v. Lukens Steel Co.,* 777 F.2d 113, 130 (3d Cir.1985) ("The presumptions and shifting burdens are merely an aid—not ends in themselves. When direct evidence is available, problems of proof are no different than in other civil cases."), *cert. granted,* — U.S. —, 107

S.Ct. 568, 93 L.Ed.2d 573 (1986); *Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 707 (6th Cir.1985) (collecting authority supporting the position that the shifting burdens of *McDonnell Douglas* do not apply if there is direct proof of discrimination); *Miles v. M.N.C. Corp.,* 750 F.2d 867, 875 (11th Cir. 1985) ("The *McDonnell Douglas* method of proving an employment discrimination case, however, pertains to situations where direct evidence of discrimination is lacking."); *Bell v. Birmingham Linen Serv.,* 715 F.2d 1552, 1557 (11th Cir.1983) ("[W]here a case of discrimination is proved by direct evidence, it is incorrect to rely on a *McDonnell-Douglas* rebuttal."), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984); *Nanty v. Barrows Co.,* 660 F.2d 1327, 1333 (9th Cir.1981) ("The *McDonnell Douglas* rule that the ultimate burden of proof remains on the plaintiff is not applicable after unlawful discrimination has been proven.").

Nevertheless, a plaintiff who has established that unlawful discrimination was a motivating factor in an employment decision is not necessarily entitled to relief under Title VII. The statute forbids the courts to "require the ... hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged *for any reason other than discrimination.*" 42 U.S.C. § 2000e–5(g) (emphasis added). Therefore, before the court could order that Fields be reinstated or paid back salary, the cause of the tenure decision had to be determined. She is not entitled to such relief solely on the basis that the decision was infected with discrimination. But discrimination need not be the sole reason for an adverse job decision for a plaintiff to be entitled to Title VII relief; "no more is required to be shown than that [it] was a 'but for' cause." *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976).

The question, which is one of first impression in this circuit, is whether a plaintiff who has proved by direct evidence that unlawful discrimination was a motivating factor in the employment decision must also prove that it was a "but for" cause. Based on our review of the law, we conclude that the *McDonnell Douglas* format should not be slavishly followed and that, after such proof by the plaintiff, the defendant must prove that the same decision would have been made absent the discrimination. *See Bibbs v. Block*, 778 F.2d 1318, 1324 (8th Cir.1985) (en banc); *Blalock v. Metals Trades, Inc.*, 775 F.2d at 711 (6th Cir.); *Miles v. M.N.C. Corp.*, 750 F.2d at 875–76 (11th Cir.); *Caviale v. State of Wis., Dep't of Health and Social Servs.*, 744 F.2d 1289, 1296 (7th Cir.1984); *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614, 620 (4th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984); *Marotta v. Usery*, 629 F.2d 615, 618 (9th Cir.1980); *Day v. Mathews*, 530 F.2d 1083, 1085 (D.C.Cir.1976) (per curiam).

The logic of such an approach is inescapable. The employer is in the best position to prove which of its motives were determinative. As Justice Scalia said while on the District of Columbia Circuit, "it is unreasonable and destructive of the purposes of Title VII to require the plaintiff to establish in addition the difficult hypothetical proposition that, had there been no discrimination, the employment decision would have been made in his favor." *Toney v. Block*, 705 F.2d 1364, 1366 (D.C.Cir.1983). Furthermore, as the Supreme Court has explained in the context of unfair labor practices,

> [t]he employer is a wrongdoer; he has acted out of a motive that is declared illegitimate by the statute. It is fair that he bear the risk that the influence of legal and illegal motives cannot be separated, because he knowingly created the risk and because the risk was created not by innocent activity but by his own wrongdoing.

*NLRB v. Transportation Management Corp.*, 462 U.S. 393, 403, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983).

Several Supreme Court decisions strongly imply that the burden should be on the employer to prove that its unlawful discrimination was not the "but for" cause of its decision. In *Mt. Healthy School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the respondent, who was a teacher, alleged that his constitutional rights were violated when the school board refused to renew his contract. He said he was not rehired because of a public statement he had made, and there was direct evidence that this impermissible reason played a substantial part in the decision not to renew his contract. *Id.* at 284, 97 S.Ct. at 574. The court said that once the plaintiff carried his burden of showing that an impermissible reason was a "motivating factor," "the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576.

In *Hunter v. Underwood*, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985), the Court approved the Ninth Circuit's shifting of the burden of proof to the defendant in a case alleging a statute was unconstitutional because it was racially discriminatory. The Court said: "Once racial discrimination is shown to have been a 'substantial' or 'motivating' factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." *Id.* at 228, 105 S.Ct. at 1920. The Court cited to its decision in *Mt. Healthy*, which placed the burden of proof by a preponderance of the evidence on the defendant. *Id.* (citing *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576).

In *NLRB v. Wright Line, A Div. of Wright Line, Inc.*, 662 F.2d 899 (1st Cir. 1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), this court addressed whether an employer should have the burden of proving that an employee was discharged for legitimate reasons when there was evidence that he was illegally fired on the basis of his union activities. We suggested that in the presence of

a clear violation of the law it may be appropriate to require a wrongdoer to prove that notwithstanding the violation its decision was justified. *Id.* at 906. We, however, rejected the National Labor Relations Board's allocation of the burden of proof, which placed the burden of persuasion on the employer when there was proof of a forbidden motive. *Id.* at 906–07. The Supreme Court later held that the National Labor Relations Board's position was justified. *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 400–01, 103 S.Ct. 2469, 2473–74, 76 L.Ed.2d 667; *see also id.* at 400 n. 5, 103 S.Ct. at 2473 n. 5 (distinguishing the *McDonnell Douglas* approach because it addressed "only the situation in which the issue is whether illegal or legal motives, but not both, were the 'true' motives behind the decision"). The Court, therefore, in addition to instructing that *McDonnell Douglas* does not apply when there is direct evidence of discrimination, has recognized the logic of placing the burden on the defendant to avoid liability in similar circumstances.

■ We hold that when a plaintiff has proved by direct evidence that unlawful discrimination was a motivating factor in an employment decision, the burden is on the employer to prove by a preponderance of the evidence that the same decision would have been made absent the discrimination. We recognize that some courts have required the defendant to carry its burden of proof by "clear and convincing" evidence. *See, e.g., Smallwood v. United Airlines, Inc.,* 728 F.2d at 620 (4th Cir.); *Marotta v. Usery,* 629 F.2d at 618 (9th Cir.); *Day v. Mathews,* 530 F.2d at 1085 (D.C.Cir.). Others require proof by a preponderance of the evidence. *See, e.g., Bibbs v. Block,* 778 F.2d at 1324 & n. 5 (8th Cir.); *Blalock v. Metals Trades, Inc.,* 775 F.2d at 711 (6th Cir.); *Miles v. M.N.C. Corp.,* 750 F.2d at 875 (11th Cir.). Because of the difficulties inherent in proving what might have been done in a hypothetical situation, we think the test usually applied in civil cases—preponderance of the evidence—is the appropriate one. Moreover, this is the test employed by the Supreme Court in *Mt. Healthy,* a case in which constitutional rights were at stake, and the Court fashioned the procedure by which a defendant could prove "that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." 429 U.S. at 287, 97 S.Ct. at 576. We see no reason to adopt a more demanding test in this context.

■ The district court's finding that sexual discrimination "impermissibly infected" the decision not to grant Fields tenure appears to us to be the equivalent of a finding that she proved by direct evidence that discrimination was a motivating factor in the decision. This finding cannot be reconciled with the court's putting the burden on Fields to prove that she was entitled to tenure. Therefore, the court erred in its allocation of this burden of proof. The court also erred by reinstating Fields for two years and awarding back pay without finding that the university, after having been afforded the opportunity to prove Fields would not have been granted tenure absent discrimination, failed to carry its burden of proof. We, therefore, remand the case for a new trial on all issues by another district court judge.[2]

*Vacated and remanded for proceedings consistent with this opinion.*

No costs.

---

2. Because we remand for a new trial, we do not decide the other issues raised in this appeal: whether testimony about sexual harassment occurring after the tenure decision was admissible, whether the damages award was proper, and whether the attorney's fees were adequate.