**Rona FIELDS, Plaintiff, Appellant,**

v.

**CLARK UNIVERSITY, Defendant,
Appellee.**

No. 91–2331.

United States Court of Appeals,
First Circuit.

Heard May 6, 1992.
Decided June 11, 1992.

Frederick T. Golder with whom Bernstein, Golder & Miller, P.A., Lynnfield, Mass., was on brief, for plaintiff, appellant.

William L. Patton with whom David J. Kerman and Ropes & Gray, Boston, Mass., were on brief, for defendant, appellee.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

## I.

This appeal centers on a sex discrimination claim arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff–Appellant Dr. Rona Fields, a former associate professor of sociology at Clark University, instituted this lawsuit in May 1980, claiming she was denied tenure at Clark because of her gender. The case was tried before Judge Skinner, Massachusetts Federal District Court, in September 1985. Judge Skinner concluded that Dr. Fields had not proven entitlement to tenure; nonetheless, he held that Title VII relief was appropriate in light of the sexually discriminatory atmosphere of Clark University's sociology department. Accordingly, Judge Skinner held Clark University liable to Dr. Fields for back pay and attorneys' fees, and ordered the University to reappoint Dr. Fields for a two-year probationary period before reconsidering her tenure application.

The case was subsequently appealed to the First Circuit Court of Appeals. In *Fields v. Clark Univ.*, 817 F.2d 931, 937 (1st Cir.1987), this Court held:

The district court's finding that sexual discrimination "impermissibly infected"

---

* Of the District of Rhode Island, sitting by designation.

the decision not to grant Fields tenure appears to us to be the equivalent of a finding that she proved by direct evidence that discrimination was a motivating factor in the decision. This finding cannot be reconciled with the court's putting the burden on Fields to prove that she was entitled to tenure. Therefore, the court erred in its allocation of this burden of proof. The court also erred by reinstating Fields for two years and awarding back pay without finding that the university, after having been afforded the opportunity to prove Fields would not have been granted tenure absent discrimination, failed to carry its burden of proof. We, therefore, remand the case for a new trial on all issues by another district court judge.

The case was then heard in an abbreviated format[1] by District Judge Keeton. On April 16, 1991, Judge Keeton entered judgment for Clark University, ruling that Dr. Fields had failed to establish that the tenure decision was impermissibly tainted by gender bias in violation of Title VII. *Rona Fields v. Clark University*, No. 80–1011–K (D.Mass. Apr. 16, 1991).

## II.

## A. THE TITLE VII LEGAL STANDARD

The court below discussed the burdens of production and persuasion in Title VII cases as set forth both in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (rearticulated in *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)), and in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The District Court judge refrained from deciding which of these standards applied to the instant case, finding that Dr. Fields had not satisfactorily established a prima facie case under *either* standard.

On appeal, Plaintiff–Appellant argued that, by not choosing one standard (*McDonnell Douglas/Burdine*) or another

(*Price Waterhouse*), the District Court, in effect, erroneously relied on the *McDonnell* standard. This argument necessitates further analysis of the *McDonnell Douglas/Burdine* and *Price Waterhouse* Title VII frameworks.

### 1. THE McDONNELL DOUGLAS/BURDINE STANDARD

In order for a plaintiff to prevail in a Title VII action, the court must first find that plaintiff has proved a prima facie case by a preponderance of the evidence. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. A *McDonnell Douglas/Burdine* prima facie showing is "proof of actions taken by the employer from which discriminatory animus can be inferred because experience has proved that in the absence of any other explanation it is more likely than not those actions were based on impermissible considerations." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 568, 98 S.Ct. 2943, 2945, 57 L.Ed.2d 957 (1978). "The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

If the court concludes that the plaintiff has proved a prima facie case by a preponderance of the evidence, the court must then consider the defendant's justification for the presumptively discriminatory action or practice. The defendant must meet a burden of production by articulating a legitimate, nondiscriminatory reason for its challenged actions; however, it need not prove that it was actually motivated by the proffered reason. *Id.* at 254–55, 101 S.Ct. at 1094–95.

The plaintiff then must have an opportunity to prove by a preponderance of the evidence that the defendant's proffered

---

1. The parties agreed by written stipulation to proceed by mini-trial, using time-saving procedures such as witness affidavits in lieu of live

testimony; the result was a four-day "Tailored Non–Jury Trial."

reason was merely a pretext for discrimination. If she successfully demonstrates that such a pretext exists, she has proven defendant's commission of a Title VII violation; if she fails to do so, the presumption of discrimination drops from the case. *See, e.g., Unites States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). Plaintiff's burden of persuasion, retained throughout, would then "merge[ ] with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, citing *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26.

### 2. *THE* PRICE WATERHOUSE *STANDARD*

■ In *Price Waterhouse,* 490 U.S. at 241–42, 109 S.Ct. at 1785–86, the Supreme Court held that "[w]hen ... an employer considers both gender and legitimate factors at the time of making a decision ... [the employee is not obligated] to identify the precise causal role played by legitimate and illegitimate motivations in the employment decision she challenges. We conclude, instead, that Congress meant to obligate her to prove that the employer relied upon sex-based considerations in coming to its decision." The Court continued:

> In saying that gender played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman.

*Id.* at 250, 109 S.Ct. at 1790.

■ Once the plaintiff has proven that her gender partly motivated the employer's adverse employment action or decision, the employer will be liable under Title VII unless "it can prove that, even if it had not

taken gender into account, it would have come to the same decision regarding [her]." *Id.* at 242, 109 S.Ct. at 1786. The Court noted that, because it does not employ burden-shifting, this framework differs from *Burdine.* Under *Price Waterhouse,* "the plaintiff must persuade the factfinder on one point, and then the employer, if it wishes to prevail, must persuade it on another." *Price Waterhouse,* 490 U.S. at 246, 109 S.Ct. at 1788.

■ *Price Waterhouse* therefore does not supplant *Burdine. Burdine*'s burden-shifting approach applies to cases where *"either* a legitimate *or* an illegitimate set of considerations led to the challenged decision." *Id.* at 247, 109 S.Ct. at 1789 (emphasis in original). *Price Waterhouse* applies only "[w]here a decision was the product of a mixture of legitimate and illegitimate motives" (commonly referred to as "mixed motive" cases). *Id.* at 247, 109 S.Ct. at 1788.

### 3. *THE APPROPRIATE STANDARD FOR THIS CASE*

■ Plaintiff-appellant urges this Court to hold that the appropriate legal framework for this case is found in *Price Waterhouse,* presumably because this framework places greater demands on the employer than does the *McDonnell Douglas/Burdine* framework. Indeed, as Judge Keeton stated:

> [T]he defendant must satisfy a greater burden once plaintiff has proved ... that her gender played a motivating part in an employment decision.... [This] in effect transforms the defendant's burden, once plaintiff proves a discriminatory motive, from a burden of production to a burden of persuasion.

*Fields,* No. 80–1011–K, slip op. at 5.

The District Court found that under either *McDonnell Douglas/Burdine* or *Price Waterhouse,* plaintiff did not clear her first legal hurdle.

> Plaintiff has failed to offer *sufficient* evidence ... that gender was a motivating factor in any of the unanimous decisions against her at each level of the decisionmaking process.

*Fields*, No. 80–1011–K, slip op. at 8 (emphasis in original). Thus, there was no need to determine which standard would dictate defendant's subsequent burden, since the next stage of the battle would not be reached.[2]

As a matter of law, the District Court did not err in failing to apply the *Price Waterhouse* standard. If it is true that plaintiff-appellant did not make out her prima facie case of sex discrimination, then a court cannot require defendant-appellee to do anything to defend its actions. The District Court appropriately refrained from applying the second tier of *either McDonnell Douglas* or *Price Waterhouse* analysis to the instant case. Only if the District Court's analysis of the facts of the case was clearly erroneous and the plaintiff *did* successfully make out a prima facie case of discrimination would the court have committed error by failing to articulate the applicable legal standard. Accordingly, we proceed to evaluate whether the district court's determination that Dr. Fields failed to make out a prima facie case was clearly erroneous.

## B. SUCCESS OR FAILURE OF PLAINTIFF–APPELLANT'S PRIMA FACIE CASE

In order to make out a prima facie case, the plaintiff must show:

(1) that she is a member of a protected class under Title VII;

(2) that she was a candidate for tenure and was qualified under Clark University standards, practices or customs;

(3) that despite her qualifications she was rejected; and

(4) that tenure positions in the Department of Sociology at Clark University were open at the time plaintiff was denied tenure, in the sense that others were granted tenure in the department during a period relatively near to the time plaintiff was denied tenure.

**2.** The District Judge further found that "even if I were to determine that plaintiff had introduced sufficient evidence to show a prima facie case under *McDonnell Douglas,* or under *Hopkins* to make this a mixed motive case rather than a pretext case, I would not ultimately decide for

*See, e.g., Banerjee v. Board of Trustees of Smith College,* 648 F.2d 61, 62 (1st Cir. 1981), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).

The only contested element of plaintiff's prima facie case is the second element—her qualifications. To pass this portion of the prima facie test, plaintiff

> need only show that [s]he was sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made. That is, [s]he need not show only that h[er] qualifications were at least sufficient to place h[er] in the middle group of tenure candidates as to whom a decision granting tenure and a decision denying tenure could be justified as a reasonable exercise of discretion by the tenure-decision making body.

*Banerjee,* 648 F.2d at 63, *quoting Banerjee v. Board of Trustees of Smith College,* 495 F.Supp. 1148, 1155–56 (D.Mass.1980).

In concluding that Dr. Fields had not fulfilled the requirements of the second element of her prima facie showing, the court below stated:

> Having weighed the evidence presented by plaintiff in this case, I find that she has not shown by a preponderance of the evidence that she was sufficiently qualified to place her in the middle group of tenure candidates in the sociology department at Clark University.... plaintiff was denied tenure by unanimous vote at each stage in the tenure review process, and failed to receive support from other men and women on the Clark faculty. Plaintiff's own testimony established that she had difficulties teaching some of the large courses to which she was assigned, and much of plaintiff's testimony was in the form of argument as opposed to recitation of fact. Defendant has introduced student evaluations and testimony from the plaintiff and the

the plaintiff because defendant has introduced sufficient evidence of a legitimate, non-discriminatory reason for its decision to deny plaintiff tenure to satisfy its burden of persuasion even under the *Hopkins* analysis." *Fields*, No. 80–1011–K, slip op. at 8–9.

defense witnesses showing that her teaching was criticized by several of her students and that the chair of her department told her on numerous occasions that he was receiving complaints from her students.

*Fields*, No. 80–1011–K, slip op. at 9–10.

In reviewing a university's tenure decision, neither the trial court nor the appellate court may "simply speculate that [the] plaintiff *may* have been denied tenure for reasons of [gender].... Inevitably, some tenure decisions ... will be very close.... Courts have no license to resolve such disputes except where there is evidence from which to conclude that an illicit motive was at work." *Kumar v. Board of Trustees, Univ. of Mass.*, 774 F.2d 1, 12 (1st Cir.1985) (Campbell, C.J., concurring). "[T]enure decisions are by their nature judgmental and subjective. In close cases reasonable people can differ. It is the choice of the university, however, not of the court, that is called for in a faculty member's contract." *Id.* at 15. Moreover, "[i]n the very complex and nuanced environment of university tenure decisions, a discrimination case with no 'smoking gun' evidence can be excruciatingly close for the district court." *Id.* at 21 (Coffin, J., dissenting).

██ We quote extensively from *Kumar* to emphasize the high degree of deference due to both the University's tenure decision and the District Court's Opinion. While we might be suspicious of Defendant–Appellee's motives, thorough review of the record provides no opportunity for this Court to find that the District Court's decision was clearly erroneous.[3]

### III.

We have reviewed this case with special care because, as noted above, the parties agreed by stipulation to proceed by "minitrial." There can be little doubt that Title VII plaintiffs face serious obstacles in carrying their onerous evidentiary burdens and, arguably, abbreviated trials may not be the most appropriate procedural format for suits of this kind. Having combed the record in this case, however, we find nothing to demonstrate that the tailored trial compromised Dr. Fields' case. Instead, it appears the trial judge willingly entertained live testimony when the litigants wished to supplement their affidavits. For example, when the defendant wished to present live testimony of several witnesses, the following colloquy took place:

THE COURT: Tell me this: Do you want to bring them before me to offer testimony beyond what's in their affidavit, or do you just want me to see them?

DEFENSE COUNSEL: No, essentially we want to bring them before you to testify what's [sic] in their affidavit. To the extent their credibility is an issue in the case, we want you to see them.

PLAINTIFF'S COUNSEL: I have no objection.

THE COURT: Well, all right. I'll allow it. I may place some limitation on how much repetition I hear, but I'll allow it.

*Fields*, No. 80–1011–K, Trial Transcript at 36.

Similarly, when plaintiff's counsel requested the Court's leave to present live testimony by plaintiff, the judge queried, "Why is it you want to call the plaintiff live, for the same reason the defendants have been mentioning, you want me to see and hear the plaintiff, or is there something more that's not in the affidavit?" Plaintiff's counsel responded, "It's not just the credibility of the witness....the live testimony of Dr. Fields is going to consist to some extent in rebutting some of [defendant's exhibits]." *Id.* at 38. The judge permitted Dr. Fields to testify.

In short, the District Judge's orchestration of this particular case was extremely flexible. There is nothing in the trial record to indicate Dr. Fields could not have introduced additional live testimony, either

---

**3.** Even if this Court found that Plaintiff–Appellant *had* made out a prima facie case, we would not need to determine whether Defendant–Appellee's actions should be evaluated in accordance with the *McDonnell Douglas/Burdine* test or, rather, under the *Price Waterhouse* framework. Under both standards, Defendant–Appellee would prevail because it sufficiently demonstrated that Dr. Fields' qualifications for tenure were at least questionable.

to highlight witness credibility or to augment her substantive case. Moreover, Dr. Fields stipulated to the use of a mini-trial process. Given all of this, we cannot speculate that the trial procedure was unfair or incomplete.

### IV.

"The fact that a court might be sympathetic to a tenure award is not enough from which to find discrimination unless the University's stated reasons are palpably unworthy of credence or there is other evidence pointing to discrimination." *Kumar*, 774 F.2d at 12 (Campbell, C.J., concurring). This Court is neither unaware of nor unsympathetic to the difficulties faced by female academicians who aspire to tenured faculty positions; nonetheless, Dr. Fields has provided us with no basis to reverse the lower court's holding.

Accordingly, the judgment of the District Court must be Affirmed.