**Vicki McCLURG, Plaintiff,**

v.

**SANTA ROSA GOLF & BEACH CLUB, INC., Defendant.**

**No. 3:98cv1/RV.**

United States District Court,
N.D. Florida,
Pensacola Division.

March 15, 1999.

Dennis K Larry, Clark Partington Hart Etc, Pensacola, FL, Margaret Catharine Rodgers, M Casey Rodgers PA, Pensacola, FL, Damian Christopher Taylor, Clark Partington Etc, Pensacola, FL, for Vicki McClurg, plaintiff.

Gary J Anton, Stowell Anton & Kraemer, Tallahassee, FL, Stephen Lanier Spector, Stowell Anton Kraemer, Tallahassee, FL, for Santa Rosa Golf & Beach Club Inc, defendant.

## ORDER

VINSON, Chief Judge.

This is an employment discrimination action brought under Title VII of the Civil Rights Act of 1964, as amended [42 U.S.C. §§ 2000e, *et seq.*], and the Florida Civil Rights Act of 1992 [Fla. Stat. §§ 760.01, *et seq.*]. The case is set for jury trial this month. All legal issues except one have been resolved at the pretrial conference. However, that issue has evidently created significant confusion for both parties, and a separate written order appears warranted.

Both parties submitted the following issue of law for this court to resolve: "Whether there is sufficient direct evidence of discrimination to permit the case to proceed under the direct evidence standard." The plaintiff further contends that the question of whether the evidence rises to the level of direct evidence of discrimination is a question for the jury to decide, while the defendant maintains that it is a question of law for the court. What the parties are really addressing, in a roundabout fashion, is whether the jury will be instructed on the "mixed motive," an affirmative defense. Obviously, the parties are not the only ones confused about "direct evidence."

For example, the Eighth Circuit's *Model Jury Instructions—Civil* (West 1998) considered three alternative ways of instructing the jury in disparate treatment cases because of the "direct evidence" versus "indirect evidence" uncertainty. *Id.* at 88–89. It ultimately decided to promulgate a "Same Decision" instruction for use in all Title VII, ADEA, Section 1981, and Section 1983 cases. *See Id.* at 89–90, 94. The Eleventh Circuit's new edition of *Pattern Jury Instructions* will follow the same rationale,[1] recognizing that for jury trial purposes, adding a complicated set of instructions for treating direct evidence differently from indirect evidence is both

1. As one member of the committee drafting these Eleventh Circuit pattern instructions, I am not expressing any opinion for the committee.

unnecessary under the law and is virtually certain to confuse, more than guide, the decision-making process of the jury.

This difficulty in instructing the jury is evident in the American Bar Association Litigation Section's *Model Jury Instructions—Employment Litigation* (ABA 1994). It sets out an instruction defining "Direct Evidence of Disparate Treatment" (*Id.* at 13); an instruction for "Defenses Against Direct Evidence of Discrimination" (*Id.* at 14); an instruction for "Indirect Evidence of Disparate Treatment" (*Id.* at 17); and an instruction on "Defenses to Indirect Evidence of Discrimination" (*Id.* at 20). It then proceeds to promulgate a similar set of instructions for age discrimination cases (*Id.* at 66–69). The multiple instructions on the use of indirect evidence require the jury to perform a *McDonnell Douglas–Burdine*[2] analysis, which also seems inappropriate. For reasons discussed below, I do not believe these forms of instruction are desirable or necessary.

The so-called "direct evidence standard" is an outgrowth from Justice O'Connor's separate concurrence in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Thus, a brief discussion of that case, and its actual holding, is warranted.

In *Price Waterhouse,* the plaintiff, Ann Hopkins, was a senior manager employed by defendant Price Waterhouse, an accounting firm. In 1982, Hopkins became a candidate for partnership, the only female out of 88 candidates. Despite securing a $25 million contract (the only partnership candidate to secure such a contract), and receiving many favorable evaluations, Hopkins was not made a partner. Instead, her candidacy was placed on hold until the following year. The defendant claimed that Hopkins' candidacy had been placed on hold because Hopkins was "overbearing and aggressive." About half of the male partnership candidates made partner.

The following year, the partners who had originally proposed Hopkins for partnership refused to do so again, and Hopkins filed a complaint in the United States District Court under Title VII, alleging that she was the victim of sex discrimination. As evidence of discrimination, Hopkins pointed to comments contained in her evaluations, many of which were indicative of stereotypical views of women. In addition, the partner responsible for explaining to Hopkins why her candidacy was placed on hold told her that she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled and wear jewelry." *Id.* 490 U.S. at 235, 109 S.Ct. at 1782, 104 L.Ed.2d at 278.

The district court judge, as the trier of fact, ruled in favor of Hopkins, finding that her employer had unlawfully discriminated against her by unlawfully considering partners' comments that were based on sex stereotyping in the firm's decision to not promote Hopkins to partner. However, the trial judge also ruled that Price Waterhouse could avoid liability for *equitable* relief by proving by clear and convincing evidence that it would have made the same decision absent the discrimination. *Id.* 490 U.S. at 237, 109 S.Ct. at 1783, 104 L.Ed.2d at 279. The Court of Appeals went one step further in its affirmance by holding that an employer can avoid all liability (not just liability for equitable relief) in Title VII cases if it proves by clear and convincing evidence that it would have made the same decision absent discrimination. Both the district court and the Court of Appeals held that, in order to avoid liability, an employer who has allowed a discriminatory motive to play a role in an employment decision must prove by "clear and convincing evidence" that it would have made the same decision in the absence of the dis-

**2.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

crimination. The Supreme Court of the United States granted certiorari, and affirmed the Court of Appeals' determination that *total* liability under Title VII could be avoided by proving that it would have made the same decision absent discrimination. It held, however, that both lower courts had erred in requiring clear and convincing evidence. Instead, the defendant's burden was only to prove the "same decision" by a preponderance of the evidence.

At issue before the Supreme Court was what standard to apply after a plaintiff has presented evidence sufficient to enable a factfinder to determine that a defendant employer considered an illegitimate factor in reaching an employment decision. Writing for four justices in the plurality, Justice Brennan set out the Court's holding that, after a plaintiff has shown that "an impermissible motive played a motivating part in an adverse employment decision," the burden of persuasion becomes the defendant's to "show that it would have made the same decision in the absence of the unlawful motive." *Id.* 490 U.S. at 238, 109 S.Ct. at 1783–84. The Court held that, if the defendant could make such a showing by a preponderance of the evidence, the defendant could avoid liability altogether.[3] *Id.* In reaching its decision, the plurality explicitly stated that this same decision test is not one of burden shifting, as in *Burdine,* but instead "is most appropriately deemed an affirmative defense: the plaintiff must persuade the factfinder on one point, and then the employer, if it wishes to prevail, must persuade it on another." *Id.* 490 U.S. at 246, 109 S.Ct. at 1788.

Totally absent from Justice Brennan's opinion is any language distinguishing "direct evidence," or limiting the type of evidence that the plaintiff may use to show that the defendant was motivated by an illegal consideration. On the contrary, it sets out: "... we do not suggest a limitation on the possible ways of proving that stereotyping played a motivating role in an employment decision, and we refrain from deciding here which specific facts, 'standing alone,' would or would not establish a plaintiff's case, *since such a decision is unnecessary in this case.*" *Id.* 490 U.S. at 251–52, 109 S.Ct. at 1791, 104 L.Ed.2d at 289. (Emphasis added).

The holding in the plurality opinion is not ambiguous or difficult to ascertain. It spells it out:

> We hold that when a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.
>
> 490 U.S. at 258, 109 S.Ct. at 1795, 104 L.Ed.2d at 293.

Justice White concurred in the judgment and wrote a short concurring opinion. His view, which seems to have been proven accurate in the intervening years, was that the decision was controlled by the principle of *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under *Mt. Healthy,* a public employee plaintiff has the burden of proving that the conduct at issue involving First

---

**3.** The *Price Waterhouse* opinion has been superseded by statute to the extent the Court held that a defendant could avoid liability altogether by showing it would have made the same decision in the absence of the discriminatory factor. *See* 42 U.S.C. § 2000e–2(m) (Which provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.") If a plaintiff proves a violation under Section 2000e–2(m) and the defendant also proves that it "would have taken the same action in the absence of the impermissible motivating factor," Section 2000e–5(g)(2)(B) provides that the court may grant certain equitable relief and award attorney's fees and costs, but it may not award damages or order reinstatement, hiring, or promotion.

Amendment rights was a motivating or substantial factor in the employer's decision. Then, the employer may avoid liability only by proving by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. Of course, Justice White was a fifth vote in favor of the Court's judgment in *Price Waterhouse.*

Justice O'Connor authored a second concurrence, agreeing that on the facts of *Price Waterhouse,* the burden of persuasion should shift to the employer to demonstrate by a preponderance of the evidence that it would have reached the same decision in the absence of discrimination. *Id.* 490 U.S. at 261, 109 S.Ct. at 1796 (O'Connor, J., concurring). She specifically joined in the plurality's holding and judgment. Thus, her disagreement must be viewed as dicta. Nevertheless, Justice O'Connor disagreed with Justice Brennan's opinion to the extent that it seemed to call for burden shifting if the employer was simply "aware" of the plaintiff's race or sex. She went on to state that the burden shifting rule should be limited to situations in which the employer has created uncertainty as to causation by knowingly giving "substantial weight" to an impermissible factor. *Id.* 490 U.S. at 262, 109 S.Ct. at 1797 (O'Connor, J. concurring). Justice O'Connor tried to set out a heavier burden for the plaintiff: "Thus, stray remarks in the workplace, while perhaps probative of sexual harassment . . . cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard. **** What is required is what Ann Hopkins showed here: *direct evidence* that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.* 490 U.S. at 277, 109 S.Ct. at 1804 (O'Connor, J. concurring) (emphasis added). Justice O'Connor's methodology would be helpful and

relevant if the case was being analyzed for purposes of a motion for summary judgment. But, it simply does not fit a trial scenario where the plaintiff must *prove* that the impermissible factor was a substantial or motivating factor before the burden of persuasion shifts to the employer to prove the "same decision."

As a result of Justice O'Connor's concurrence (specifically, her use of the term "direct evidence"), significant confusion developed among the circuit courts in the years following the *Price Waterhouse* decision. *See* Steven M. Tindall, *Do As She Does, Not As She Says: The Shortcomings of Justice O'Connor's Direct Evidence Requirement in Price Waterhouse v. Hopkins,* 17 Berkeley J. Employment & Lab. L. 332 (1996). The primary source of the confusion is that she was not using the term "direct evidence" in its traditional sense; that is, "evidence, which if believed, proves existence of fact in issue *without inference or presumption*". *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 n. 6 (11th Cir.1987) (*citing* BLACK'S LAW DICTIONARY 413 (5th ed. 1979)) (Emphasis by the court). Instead, she apparently defined "direct evidence" as evidence from which "a reasonable factfinder could draw an inference that the decision was made 'because of' the plaintiff's protected status." *Price Waterhouse, supra,* 490 U.S. at 277, 109 S.Ct. at 1804, 104 L.Ed.2d at 305.

Some of the confusion seems to have been generated by the *McDonnell Douglas/Burdine* [*see* footnote 2, *supra*] method of demonstrating intentional discrimination via a *prima facie* case. Prior to *Price Waterhouse,* this was the accepted methodology utilized by the lower courts in dealing with discrimination cases. It had, and continues to have, a high degree of utility in setting a framework for ruling on motions for summary judgment in these type of cases. However, such utility ordinarily ends by the time of trial. The Supreme Court made this abundantly clear in *St. Mary's Honor Center v. Hicks,* 509

U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once a defendant carries its burden of production, the presumption raised by the *prima facie* case is rebutted and "drops from the case." *Id.* 509 U.S. at 507, 113 S.Ct. 2742, 125 L.Ed.2d at 416. The plaintiff retains the ultimate burden of persuading the trier of fact that the plaintiff has been the victim of intentional discrimination." *Id.* The *McDonnell Douglas/Burdine* methodology is nothing more than "a *procedural* device." *Id.* 509 U.S. at 521, 113 S.Ct. at 2754, 125 L.Ed.2d at 425. (Emphasis by the Court). Rule 301 of the Federal Rules of Evidence continues to control.

Justice O'Connor cited to three lower court opinions in support of her view of "direct evidence." *Bell v. Birmingham Linen Service,* 715 F.2d 1552 (11th Cir. 1983); *Fields v. Clark University,* 817 F.2d 931 (1st Cir.1987); *Thompkins v. Morris Brown College,* 752 F.2d 558 (11th Cir.1985). All three utilized the "direct evidence" term to describe a form of evidence used when deciding employment discrimination cases for purposes of motions for summary judgment. It, too, is not "direct evidence" in its traditional evidentiary meaning. It is not evidence proving a fact in issue without inference or presumption. Instead, it has come to mean statements: (a) made by an employer's decisionmakers that reflect a bias against the plaintiff's protected class, and (b) which are closely connected to the adverse employment action at issue either logically (having a cause and effect relationship) or temporally (having been made shortly before or after the employment action, or both). *See Tindall, supra,* 17 Berkeley J. Empl. & Lab. L. at 348. It is, therefore, a third type of "direct evidence," for it differs slightly from the definition utilized by Justice O'Connor. As discussed further, this type of so-called "direct evidence" has been treated as an alternative to the *McDonnell Douglas/Burdine* methodology in deciding summary judgment motions. However, once its use as a procedural device to allow a plaintiff to stay in court

has passed, it ordinarily "drops from the case."

Upon careful scrutiny, it makes no sense to treat this type of evidence differently from all other evidence at trial. In fact, juries are customarily instructed: "The law makes no distinction between the weight you may give to either direct or circumstantial evidence." Eleventh Circuit Jury Instructions—Civil Cases (pending draft). If the finder of fact at the trial relies upon all the evidence, and without any distinction between direct and all other evidence (however characterized), then there obviously is going to be a problem in attempting to instruct a jury on how to decide if there is "direct evidence" in the case, and if it finds that there is, how to treat it.

Justice O'Connor's use of the term "direct evidence" flows from the somewhat similar use by lower courts in doing the summary judgment motion analysis. The discontinuity occurs when that utilization of the term moves into a trial context. For a trier of fact (either judge or jury) to treat such evidence differently from other evidence requires courts to "treat discrimination differently from other ultimate questions of fact"—exactly what the Supreme Court has repeatedly declared to be improper. *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407. To make the problem even worse, judges in this circuit have had a very difficult time in determining whether any particular statement constitutes "direct evidence" of discrimination in a summary judgment motion context. *See, e.g., Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189–90 (11th Cir.1997) (and compare cases cited therein); *Burrell v. Board of Trustees of Georgia Military College,* 125 F.3d 1390, 1393 n. 7 (11th Cir.1997) (and compare cases cited therein); *Hearn v. General Electric Co.,* 927 F.Supp. 1486, 1497–98 (M.D.Ala.1996). If judges cannot consistently determine what constitutes this new form of "direct evidence," it

seems unduly naive to expect juries to make that decision.

It is unfortunately true that the Eleventh Circuit has occasionally added more confusion to the "direct evidence' enigma. For example, in *Haynes v. W.C. Caye & Co., Inc.,* 52 F.3d 928, 930 (11th Cir.1995), the Court reviewed a judge-trial verdict and found that the trial court had erred by not considering some "direct evidence:"

> The direct evidence in the instant case is indistinguishable from some of the evidence which the Supreme Court in *Price Waterhouse v. Hopkins* [citation omitted] considered as direct evidence. One item of evidence relied upon by the Supreme Court in that case ... cannot be distinguished from the evidence in this case.

The Court then, in footnote 8, cites with approval Justice O'Connor's concurring opinion as the "holding" of *Price Waterhouse:* "Once a Title VII plaintiff has demonstrated by direct evidence that discriminatory animus played a significant or substantial role in the employment decision, the burden shifts to the employer to show that the decision would have been the same absent discrimination." 52 F.3d at 931 n. 8. Of course, Justice Brennan authored the plurality opinion and the holding which was the "judgment" joined in by Justices White and O'Connor, and he squarely contradicted that suggestion. A comparison of the plurality's "holding" (joined in by both Justice White and Justice O'Connor) (*see supra.*) reflects that it requires that the plaintiff first *"proves that her gender played a motivating part"* (emphasis added), before the defendant's affirmative defense burden of proving the "same decision" arises.

A further problem, as alluded to by the district court in *Hearn v. General Electric Co.,* 927 F.Supp. 1486, 1498–99 (M.D.Ala. 1996), is that this application of the so-called "direct evidence" standard is contrary to the plain language of Title VII, which states, in relevant part, that to establish liability, the plaintiff must show that "[the illegitimate criteria] was a motivating factor for any employment practice, even though other factors may have also motivated the practice." (*quoting* 42 U.S.C. § 2000e–2(m)). Thus, to the extent that courts in this circuit have altered the way in which a plaintiff can establish liability in a mixed motive case by simply adducing some direct evidence, they are changing what the law mandates. Put another way, under this rationale, if there is even slight so-called "direct evidence" present in the case, the burden of persuasion would then shift to the defendant, and the plaintiff would not have to prove that the prohibited discrimination was a motivating factor. This cannot be:

> The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.
>
> *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at 507, 113 S.Ct. 2742, 125 L.Ed.2d at 416 (quoting *Burdine* ).

■ Returning to the issue of law presented in this case: first, the same decision test is an affirmative defense. In this case, because the defendant alleged in the answer that it would have made the same decision in the absence of discrimination, the defendant has properly raised the affirmative defense, and accordingly, if supported by evidence, I shall instruct the jury on the "same decision test." Second, the issue of whether the plaintiff's gender was a motivating factor in terminating the plaintiff is an issue to be determined by the jury and upon which the plaintiff has the burden of persuasion. Direct evidence, however defined, will not be treated differently from other evidence in the trial.

DONE AND ORDERED.