Smith v. F.W. Morse                    CV-90-361-M    04/24/95 P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Kathy Smith,
        Plaintiff,

    v.                                          Civil No. 90-361-M

F. W. Morse & Co.,
        Defendant.



O R D E R


    This matter was tried before the court.  Plaintiff, Kathy

Smith, brought breach of contract and sexual discrimination (42

U.S.C. § 2000e-2(k)) claims against her employer, F.W. Morse &

Co.  The court dismissed plaintiff's breach of contract claim but

tried her discrimination claim.  Plaintiff alleges that F.W.

Morse & Co. ("F.W. Morse") discriminated against her based on

pregnancy and an expressed intent to have additional children in

the future.


**BACKGROUND**

    On December 23, 1988, F.W. Morse purchased Damar Plastic and

Metal Fabrications, Inc. ("Damar").  As a "contract

manufacturer," Damar built custom components for a variety of

industries, including telephones, computers, and medical instruments.

Plaintiff's brother started Damar, and she had been employed there in various capacities since 1975. At the time of defendant's acquisition, plaintiff served as Damar's schedular. Her duties included tracking and expediting customer orders. Soon after the acquisition plaintiff approached Christopher Bond ("Bond"), F.W. Morse's president, and informed him that she was pregnant and would be requesting maternity leave. Bond assured plaintiff that she would be given maternity leave and he assured her that neither pregnancy nor maternity leave would cause her to lose her job, and that she was considered a valued employee performing a valuable function.

As the new owner, F.W. Morse naturally conducted its own general assessment of Damar's operations and concluded that it Damar was burdened with a highly inefficient management structure. Led by Maryann Guimond ("Guimond"), who was brought in as the new general manager, F.W. Morse almost immediately embarked upon a complete overhaul of Damar's management structure. Within a month Guimond eliminated the positions of

2

production and shipping managers, and promoted plaintiff to a newly created position of "Materials Manager," to fill the void created by the two managerial eliminations. As the new materials manager plaintiff retained her scheduling duties, and took on additional responsibilities for production/inventory control, purchasing, shipping, and receiving. Plaintiff was awarded pay raises of 13.3% in January and 11.11% in March, which increased her weekly salary from $381.60 per week to $480.77 per week by March of 1989.

Plaintiff met with Guimond in mid-March, before going on maternity leave, at which time Guimond told her that she would be promoted again upon her return, and that either Ron Paradise or Marc Shevenell, mechanical and sheet metal experts respectively, would be let go. Guimond also said that the Engineering Manager, Gary Bickford, would likely be demoted. Guimond also asked plaintiff to assume some of the Engineering Manager's duties upon her return.

On April 7, 1989, plaintiff began her maternity leave. She gave birth approximately two weeks later. Plaintiff originally intended to resume work on Monday, May 22, 1989, however, on May

3

1, 1989, she visited the plant and asked Guimond if she could return one week earlier than planned. Guimond approved the earlier return date. During the course of that conversation, Guimond asked plaintiff whether she planned to have additional children. Plaintiff responded that she did. Guimond did not indicate why she asked the question and she registered no outward sign of pleasure or displeasure with plaintiff's response.

The following day, Guimond approached plaintiff's co-worker (and sister), Karen Vendasi ("Vendasi"). Guimond also asked Vendasi about plaintiff's plans to have additional children. Vendasi was uncomfortable with the question and soon thereafter telephoned plaintiff to let her know that Guimond had inquired about her plans for future children. Vendasi also told plaintiff of a rumor circulating among the employees that plaintiff was not returning to work because she wanted to stay at home with her children.

Plaintiff immediately called Guimond, demanding to know the source of the rumor and whether her job was in jeopardy. Guimond assured plaintiff that her job was secure and that she was

4

unaware of any such rumor.  On May 4, 1989, plaintiff again saw Guimond and received similar assurances.

One week later, on May 11, 1989, Guimond telephoned to tell plaintiff that her job was going to be eliminated in a further reorganization.  Guimond asked plaintiff if she wanted people to be told that she had unilaterally decided to stay home with her infant child, rather than that she had been terminated.  Plaintiff refused to allow Guimond to tell the company's customers the "story" that she decided to stay home.  However, soon thereafter Elaine Nadeau ("Nadeau"), one of defendant's employees, did tell some customers that plaintiff had chosen to remain at home with her child.  Guimond asserted and the court finds that Nadeau's comments were not authorized; that Nadeau merely assumed that was the case; and that Nadeau received a disciplinary warning as a result of her conduct.

The decision to eliminate plaintiff's job, and terminate her employment was entirely Guimond's; she had the authority to hire and fire without Bond's approval.

## APPLICABLE STANDARD

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2, states in pertinent part:

> (a)  it shall be an unlawful employment practice for an employer
> (1)  to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his or [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, religion, sex, or national origin .  . . .

The 1978 enactment of the Pregnancy Discrimination Act (PDA) amended the definitional section of Title VII, providing in part:

> The terms "because of sex" or "on the basis of sex" include but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .

42 U.S.C. § 2000e(k).

An employee plaintiff is not required to "identify the precise causal role played by the legitimate and illegitimate motivations in the employment decision she challenges." Fields v. Clark University, 966 F.2d 49, 52 (1st Cir. 1992); quoting

Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989).  Instead "[a] plaintiff can establish a violation of Title VII under a `mixed motives' theory by showing that [gender] discrimination played a role in the challenged employment decision.  Tolefree v. City of Kansas City, Mo., 980 F.2d 1171, 1174 (8th Cir. 1993).

Upon proving gender played a motivating role in an employer's decision, "the [employer] may avoid liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account."  Price Waterhouse, 490 U.S. at 258.  At the same time though "[a]n employer may not . . . prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision."  Id. at 252.

Job elimination is a legitimate reason for an employer to terminate an employee.  Employee's are legitimately terminated where  "`business considerations cause an employer to eliminate one or more positions within the company.'"  LeBlanc v. Great American Insurance Co., 6 F.3d 836, 846 (1st Cir. 1993); (quoting) Barnes v. Gencorp, Inc., 896 F.2d 1457, 1465 (6th Cir.

7

1990).  Employee's, however, are not legitimately "`eliminated as part of a work force reduction when . . . replaced after . . . discharge.'"  Id.  While job elimination followed by replacement hirings is impermissible, employer's may redistribute the terminated employee's duties within the company.  See Id. ("A discharged employee `is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.")

## DISCUSSION

Under the Price Waterhouse analysis, the fact finder must first decide whether plaintiff has proven that gender discrimination was a factor in defendant's decision.  See Id.  If so, the burden then falls upon the defendant to prove by a preponderance of the evidence that plaintiff would have been terminated without regard to gender considerations.

The evidence establishes that the downsizing of Damar's "top heavy" management structure began immediately upon its acquisition by F.W. Morse.  Only four days after F.W. Morse took over it eliminated the position of Control Manager.  One month

8

later the Shipping Manager's position was eliminated. Plaintiff was assigned duties previously assigned to each of the eliminated positions, and she in turn became the new Materials Manager.

As plaintiff's maternity leave approached, Guimond became concerned that the daily operations of the plant would suffer in her absence. Guimond was concerned, and was led by other managers to believe, that plaintiff's maternity absence would likely cause a serious disruption in the company's operations. Consequently, Guimond hired a new employee to handle plaintiff's clerical duties, and she redistributed plaintiff's more substantive responsibilities to Paradise and Shevenell. As plaintiff left on maternity leave, the temporary managerial structure consisted of the following people and positions: Paradise (Operations Manager); Shevenell (Manufacturing Manager); Michael Seeger (Sales Manager); Gary Bickford (Engineering Manager).

Guimond met with managers regularly to insure that any problems arising from plaintiff's absence were being addressed and resolved. Both Paradise and Shevenell reported that there were no problems. Guimond held similar meetings weekly during

9

plaintiff's absence, at which similar determinations were made. Realizing that nothing was falling through the cracks in plaintiff's absence, and operations were not adversely affected, Guimond saw an opportunity to further streamline the managerial structure. Guimond decided to eliminate plaintiff's position, terminate her employment and permanently redistribute her managerial duties. That decision was based on her judgment that the plant was able to operate and was operating efficiently in plaintiff's absence.

Guimond's general and overriding goal was to overhaul the entire managerial structure of F. W. Morse. Accordingly, Guimond eliminated a position she determined the company could do without. Plaintiff's duties, such as production control, purchasing, inventory, shipping, and receiving, were in fact redistributed to Ron Paradise ("Paradise"). Paradise had been one of the two manufacturing managers, but his title was changed to Operations Manager after plaintiff's position was consolidated into his own. Guimond did not hire a managerial replacement to fill plaintiff's position or one similar to it.

10

Guimond also eliminated the position of "Engineering Manager" about the same time. Guimond came to the same conclusion regarding that position; it was no longer needed and other managers could handle those duties. Therefore by May of 1989, Guimond had eliminated four (4) managerial positions leaving three managers in charge of operations, manufacturing, and sales respectively. Reflecting the substantial reductions in the managerial staff, Guimond also eliminated a number of general employee positions.

Of the remaining managers, each had played an integral role in the daily functioning of the plant. Their respective expertise mirrored defendant's primary business functions: manufacturing and selling quality products. The remaining operations manager, Paradise, had served in a managerial capacity since shortly after plaintiff's brother founded the company. Defendant understandably placed a premium on his overall manufacturing knowledge and technical skill.

Paradise was not only more experienced than plaintiff, but he was also an expert machinist, responsible for the proper functioning of the plant's manufacturing equipment. Paradise'

11

salary, the highest among mangers, reflected the value placed on his services by the company. Shevenell, the remaining manufacturing manager, was also essential to the company's operations. He had been employed since approximately 1978, and was expert in sheet metal fabrication. He oversaw the actual pressing, shearing, finishing, and assembly of sheet metal into the various custom component parts produced by the company. Michael Seeger, Sales Manager, was the other remaining manager. His function, sales, was also essential, and did not overlap any functions performed by plaintiff.

Under these circumstances, the court necessarily finds that defendant has proven that legitimate business judgment motivated the elimination of plaintiff's position and that redistribution of her duties within the existing management structure occurred. In terms of personnel management, Guimond's behavior was at best indelicate and insensitive, and it certainly caused plaintiff to be legitimately suspicious of the motivation behind her termination. Still, Guimond's decision to eliminate plaintiff's position, though hard-nosed and perhaps harsh, stemmed from her conclusion that plaintiff's absence was not only manageable but that the company could function efficiently without her. The

12

court finds that defendant's decision was motivated by business judgment and represented an effort to economize by placing the most qualified personnel in the fewest number of managerial positions possible, and was not based on plaintiff's gender, pregnancy, or her expressed desire to have more children. Defendant has also demonstrated that even if Guimond is assumed to have considered impermissible gender-based factors, the same decision to eliminate plaintiff's position would still have been made at the same time, for the business reasons described if gender-based factors had not been considered.

That Guimond told plaintiff she intended to eliminate either Paradise's or Shevenell's position while she was out on maternity leave does not alter the result. Guimond was free to change her mind as she realized that plaintiff's duties could be eliminated without adverse consequences to the company (plaintiff was an "at will" employee). Paradise and Shevenell were the only remaining managers who possessed comprehensive knowledge of both the mechanical and manufacturing side of the business. Plaintiff's skill on the other hand was in the field of expediting customer orders that Paradise and Shevenell filled. Guimond concluded (whether rightly or wrongly is of little consequence here) that

13

Paradise and Shevenell could handle plaintiff's expediting, purchasing, and inventory duties, while at the same time overseeing the actual manufacturing process. Based on her conclusion, Guimond was entitled to exercise her discretionary authority to eliminate plaintiff's position without fear of violating Title VII.

That the expendability of plaintiff's position was discovered as a direct result of her being absent on maternity leave also does not, by itself, convert an otherwise legitimate business decision into gender-based discrimination. While plaintiff's perception that Maryann Guimond discriminated against her is entirely understandable and neither an unreasonable nor a baseless perception, the evidence did establish that plaintiff's job was eliminated for legitimate reasons, without regard to whether plaintiff took maternity leave and without regard to her future child bearing plans. This is not a case in which job elimination was merely a pretext for discharging an employee based on gender bias; the job was in fact eliminated, no one replaced plaintiff, and her managerial duties were in fact redistributed to remaining employees.

14

**CONCLUSION**

Defendant having proven by a preponderance of the evidence that plaintiff's position was eliminated for legitimate business reasons and that even assuming gender bias played a role in the decision, the job still would have been eliminated if consideration of plaintiff's maternity leave or her expressed desire to have additional children were disregarded, judgment shall be entered in favor of defendant.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

April 24, 1995

cc:  Raymond P. Blanchard, Esq.
     Debra Weiss Ford, Esq.

15