**Charles DOLL, Plaintiff–Appellee,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Defendant–Appellant.**

No. 95–1505.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1996.

Decided Feb. 8, 1996.

Rehearing Denied March 18, 1996.

---

Stephen G. Seliger (argued), Chicago, IL, Clare M. Kralovec, Mary L. Mikva, Seliger & Mikva, Chicago, IL, for Plaintiff–Appellee.

Robert S. Greenspan, Jeffrey Clair (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, Jonathan Haile, Office of the United States Attorney, Civil Division, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

The appeal by the government in this suit under section 501 of the Rehabilitation Act, 29 U.S.C. § 791, presents important questions concerning remedies in employment discrimination cases. The plaintiff, Charles Doll, who is now 60 or 61 years old, a competent and experienced electrician, was in August of 1986 employed as an electrician by a Veterans Administration (now Department of Veterans Affairs) hospital. He was afflicted with cancer of the throat and that month underwent both a laryngectomy and a tracheotomy. As a result of these operations he not only has no larynx, but breathes through a hole in his throat (a stoma) rather than through his nose and mouth. He returned to work the month after the operations. Several months later, in March of 1987, while putting out a small fire at work, he inhaled some of the chemical particulates from the fire extinguisher, had trouble breathing, and had to be rushed to the emergency room of the hospital. Apparently the problem was that the particulates, breathed through his stoma and thus unfiltered by his nose, caused him to cough, and the coughing ruptured the stitches in the not yet completely healed stoma, causing bleeding and the breathing difficulties. Doll asked his superiors to excuse him from having to work around heavy dust. They refused to make this accommo-

dation to his condition, and instead, in June of 1987, transferred him to a different job, that of parts and tools attendant. Although at first his salary was the same as his electrician's salary, later the electricians received larger raises and as a result Doll earned less than he would have done had he remained an electrician. After the stoma healed completely, he was able to work even in heavy dust but his superiors refused to reinstate him as an electrician.

In March of the following year he applied for promotion to the position of electrician foreman, where he would have been in charge of the 12 to 14 electricians employed in the hospital's electrical unit. Even though the foreman is exposed to less dust than the other electricians, and even though Doll had recovered sufficiently to work in heavy dust, his superiors refused even to consider his application for the foreman's job, and the job went to another electrician, Dennis Stein.

After exhausting his administrative remedies, Doll brought this suit against the Department of Veterans Affairs. The suit proceeded to trial before Judge Hart. He concluded that the Department had violated the Rehabilitation Act, and he ordered the Department to reinstate Doll as an electrician, to pay him $61,508 in back pay, representing the difference between the salary he actually received between April 1988 (when the foreman's job went to Stein) and the date of trial and the salary he would have received had he been made foreman then, and to consider Doll for promotion to electrician foreman when the position next became vacant. It did become vacant shortly afterward, and Doll applied and was again passed over.

The plaintiff in an ordinary tort case must prove not only that the defendant committed a wrongful act but also that the act injured the plaintiff, that is, made him worse off than he would have been had the defendant not acted. Both wrong and injury are elements of the plaintiff's case, which he thus must prove by a preponderance of the evidence, because, as we tirelessly repeat, most recently in *Rozenfeld v. Medical Protective Co.,* 73 F.3d 154, 155–56 (7th Cir.1996), there is no tort without an injury. But in the case of the statutory and constitutional torts of employment discrimination, the Supreme Court has held that the burden of proof on the issue of injury rests on the employer, the defendant, rather than on the employee, the plaintiff. If the plaintiff succeeds in proving that the employer violated the law, the latter can avoid having to pay damages or to provide other relief to the plaintiff only by proving that the plaintiff was not made worse off by the violation. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 359, 362, 97 S.Ct. 1843, 1866–67, 1868, 52 L.Ed.2d 396 (1977); *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 772–73, 96 S.Ct. 1251, 1267–68, 47 L.Ed.2d 444 (1976).

This shifting of burdens is not quite the novelty that it may seem. Even in common law tort cases courts sometimes shift the burden of proof on the issue of injury to the defendant, for example in DES cases, where plaintiffs cannot show which manufacturer's pills they ingested. See, e.g., *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal. Rptr. 132, 144–46, 607 P.2d 924, 936–38 (1980); *Krist v. Eli Lilly & Co.,* 897 F.2d 293, 300 (7th Cir.1990), and examples discussed in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 263–64, 109 S.Ct. 1775, 1797–98, 104 L.Ed.2d 268 (1989) (concurring opinion).

██ Analysis is complicated in the field of employment discrimination by the "mixed motive" cases, which are subtly different from the no-injury cases, of which this is claimed to be one. If the plaintiff proves that the employer was motivated to take the action of which the plaintiff complains, which might be, as here, the denial of a promotion, by a discriminatory purpose, but the employer proves that he would have taken the same action even if he had had no discriminatory purpose, the employer has negated liability and not just injury. *Price Waterhouse,* which adopted this allocation of burdens in mixed-motive cases under Title VII of the Civil Rights Act of 1964, held that the employer's standard of proof for rebutting liability in a mixed-motive case is the usual civil standard of the preponderance of the evidence. But the Court left open the possibility that there might be a higher standard when liability is established and the employ-

er seeks to negate only injury. *Id.* at 253–54, 109 S.Ct. at 1792–93 (plurality opinion). Congress has amended Title VII to convert mixed-motive cases to no-injury cases, 42 U.S.C. § 2000e–2(m); *Pilditch v. Board of Education,* 3 F.3d 1113, 1118 n. 2 (7th Cir. 1993), but we may assume, without having to decide, that the *Price Waterhouse* approach survives in other types of discrimination cases. Liability was established here by the fact that the Rehabilitation Act imposes on federal employers a positive duty (here violated) of accommodation to any known physical or mental handicap of a qualified applicant or employee, as well as the usual negative duty of nondiscrimination. 29 C.F.R. § 1613.704; *Fedro v. Reno,* 21 F.3d 1391, 1394–95 (7th Cir.1994); *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1514–15 (2d Cir.1995).

Some courts, including ours, have held that the employer who wants to prove that there was no injury must do so by clear and convincing evidence. E.g., *United States v. City of Chicago,* 853 F.2d 572, 575 (7th Cir.1988); *Trout v. Lehman,* 702 F.2d 1094, 1107 (D.C.Cir.1983), vacated on other grounds, 465 U.S. 1056, 104 S.Ct. 1404, 79 L.Ed.2d 732 (1984). Since the government does not contest that approach in this case, we accept it, but we shall not conceal our skepticism, especially with regard to the application of this purely judge-made rule to suits against the United States. Common law tort cases that shift the burden of proof on the question of injury do not go this far, and while employment discrimination is wrongful and should be sanctioned, so should killing a person by driving carelessly. It is true that the plaintiff in a personal injury case is generally in as good a position as the defendant to obtain evidence on whether the defendant injured him, while the relevant evidence of injury in an employment discrimination case—evidence as to whether the employer would have taken the adverse action complained of even in the absence of a discriminatory motive—is in the defendant's possession. That is a reason for shifting the burden of production to the defendant but not for shifting the burden of persuasion (though that is what the mixed-motive and no-injury cases do, *Bristow v. Drake Street*

*Inc.,* 41 F.3d 345, 353 (7th Cir.1994)), let alone for shifting the burden of persuasion *and then increasing* that burden. The practical effect is to enable some plaintiffs who were not injured by the defendant's wrongdoing (beyond the loss of a chance, of which more later) to obtain a large award anyway.

A remedy that "compensates" for a loss when there is no loss, or overcompensates for a slight loss, is punitive. Since punitive damages are never authorized in suits against the United States, it is particularly questionable to use a rule on burden of proof to authorize the award in such suits of what are in effect though not in name punitive damages. This was done in *Day v. Mathews,* 530 F.2d 1083, 1085–86 (D.C.Cir.1976) (per curiam), but without discussion of the possible significance of the fact that the defendant was a federal agency (a cabinet secretary sued in his official capacity). The circuits have divided over the propriety of requiring clear and convincing evidence of noninjury in employment discrimination cases even if the defendant is a private employer. With *City of Chicago* and *Trout* compare *Fields v. Clark University,* 817 F.2d 931, 937 (1st Cir.1987), and *Wooldridge v. Marlene Industries Corp.,* 875 F.2d 540, 549 (6th Cir.1989).

*Fields* points out that in *Mt. Healthy School District Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), the Supreme Court had expressly adopted the standard of preponderance of the evidence, not the standard of clear and convincing evidence, to govern the determination whether unconstitutional employment discrimination had been a "but for" cause of the plaintiff's loss of employment. Why should a defendant have a greater burden when the claim of employment discrimination is statutory rather than constitutional? *Day v. Mathews,* the only case we have found in the "clear and convincing" line except *Trout* that contains an actual discussion of the merits of the approach (rather than merely citing *Day* or some other earlier case adopting it), was decided before *Mt. Healthy.*

It is true that *Day* and *Mt. Healthy* are mixed-motive cases, in contrast to *Wooldridge* and *Trout,* which are no-injury cases.

In *Mt. Healthy,* for example, if the employer would have fired the plaintiff anyway, then it did not commit a discriminatory act, as opposed to harboring a discriminatory purpose, which is not itself a tort. So subtle is the difference, however, that *Day,* though gravely impaired by *Mt. Healthy* in its original setting, both continues to be treated as an authoritative precedent in the no-injury line and has been misdescribed, by the very court that decided it, as a no-injury case. *Milton v. Weinberger,* 696 F.2d 94, 98–99 (D.C.Cir. 1982). We noted earlier that *Price Waterhouse* had left open the question whether a higher burden of proof might be applicable in no-injury cases, and here we add that a regulation by the EEOC endorses the clear and convincing standard in such cases (including cases under the Rehabilitation Act) precisely when a federal agency is the employer. 29 C.F.R. §§ 1614.203, 1614.501(b)(1)(i), (c)(1), (c)(2).

This welter of confusion cries out for a no-holds-barred reexamination of the validity of our court's adoption of the clear and convincing rule to govern no-injury cases. But this is not the case in which to conduct such a reexamination. Not only has the government failed to challenge the circuit's approach, so that there has been no adversary presentation concerning it, but the district judge's ruling cannot stand in any event. All he said about injury in his Rule 52(a) findings was that although the government had contended at trial that Doll "would not have been selected as foreman because the qualifications of the candidate selected were superior," "this evidence is not persuasive. Doll has been shown to be an excellent electrician and his qualifications were not fully considered at the time he applied for promotion." The only explanation for why the government's evidence (and it *was* evidence, not mere contention) was not persuasive is found in the last sentence that we have quoted, and that sentence is a non sequitur. No one doubts that Doll is an excellent electrician; and that his qualifications were not fully considered is the judge's essential finding on liability, which the government does not question. Neither point meets the government's argument that Stein had superior qualifications for the foreman's job. He had

been "electrician leader," the number two man in the electrical unit; and for the past 21 years, the electrician leader had always been the person made foreman unless he did not apply for the job, though in other units of the engineering department the leader had occasionally lost out in the competition for promotion to foreman. Two years before Stein was appointed as electrician foreman in preference to Doll, and thus before Doll's operations, Doll and Stein had been rivals for appointment as electrician leader; and Stein had won.

Doll was a more experienced electrician than Stein, however, and actually had some foreman experience in previous jobs, so we cannot say that Stein would certainly have received the appointment as foreman even if Doll's medical condition had not been improperly held against him. Nor is there evidence as to how good a job Stein did as electrician leader, or for that matter as foreman, a position from which he had moved on—we do not know where—when Doll was considered and passed over for a subsequent vacancy. Nor did the government call as a witness the person who had made the decision to appoint Stein as foreman in preference to Doll.

■ We are therefore reluctant to conclude, though invited to do so by the government, that the evidence was *so* one-sided that no rational trier of fact could find that Doll would have been selected over Stein, even though Stein had bested Doll two years earlier and even though there was this long tradition of promoting the electrician leader to the foreman's position when the latter became vacant. Nevertheless the balance of the evidence inclined so far against Doll that the judge had to give a fuller explanation for ruling in his favor. The findings in a bench trial must be sufficiently detailed, reasoned, and logical to enable the reviewing court to trace a persuasive path between the evidence and the judgment. *Schneiderman v. United States,* 320 U.S. 118, 129–31, 63 S.Ct. 1333, 1338–40, 87 L.Ed. 1796 (1943); *Monarch Beverage Co. v. Tyfield Importers, Inc.,* 823 F.2d 1187, 1192 (7th Cir.1987); 9A Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice and Procedure* § 2579, pp. 539–41, 546–48 (2d ed. 1995).

The judge himself may not have had full confidence in his finding of injury, for he flinched when it came to formulating the remedy. If Doll would have been appointed foreman in March of 1988 but for the government's violation of the Rehabilitation Act, then the judge, rather than just ordering the hospital to *consider* Doll for appointment to foreman the next time a vacancy arose, should either have ordered him appointed to the position forthwith, to put him where he would have been but for the violation, or awarded him front pay, to put him in the same financial position that he would have occupied but for the violation. The relief he ordered fell short. Doll's able counsel, in explaining why he did not cross-appeal to challenge this inadequate relief, argues that the judge did not think he had the *power* to order the government to kick out the existing foreman to make way for Doll. The judge did not say this, and we doubt that he thought it, because it would be wrong. No one has a *right* to occupy a position that he obtained as a result of unlawful discrimination, even if he himself was not complicit in the discrimination. *Franks v. Bowman Transportation Co., supra,* 424 U.S. at 774–75, 96 S.Ct. at 1268–69; *Bruno v. City of Crown Point,* 950 F.2d 355, 360 (7th Cir. 1991); *Lander v. Lujan,* 888 F.2d 153, 156–58 (D.C.Cir.1989). The Fourth Circuit's view that the plaintiff must wait until there is a vacancy, *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 120–21 (4th Cir.1983), has no basis in the statute or in equitable principles and is contrary to the Supreme Court's decision in *Franks,* 424 U.S. at 774–79, 96 S.Ct. at 1268–71; see *Romasanta v. United Air Lines, Inc.,* 717 F.2d 1140, 1148 (7th Cir. 1983).

■ Of course the effect on innocent third parties is a factor to be taken into account in the formulation of an equitable remedy. The point has been made many times in employment discrimination cases, e.g., *International Brotherhood of Teamsters v. United States, supra,* 431 U.S. at 372, 97 S.Ct. at 1873; *City of Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702, 722–23, 98 S.Ct. 1370,

1382–83, 55 L.Ed.2d 657 (1978); *Romasanta v. United Air Lines, Inc., supra,* 717 F.2d at 1147–51, and has, in at least one circuit, been elevated into a presumption against bumping innocent incumbents. See *Walters v. City of Atlanta,* 803 F.2d 1135, 1149 n. 14 (11th Cir.1986). Clearly the judge did not have an absolute duty to order Doll reinstated. But if he had a reason not to order Doll made foreman—concern with friction in the workplace, cf. *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1231 (7th Cir.1995), or changed circumstances of some kind, or solicitude for the current incumbent—then, as we have said, he should have ordered an award of front pay, an equitable substitute for reinstatement (or, here, "instatement") where reinstatement would be inequitable. See *Fortino v. Quasar Co.,* 950 F.2d 389, 398 (7th Cir.1991); *Walsdorf v. Board of Commissioners,* 857 F.2d 1047, 1054 (5th Cir. 1988). *Lussier v. Runyon,* 50 F.3d 1103, 1107–08 (1st Cir.1995), so holds with specific reference to the Rehabilitation Act. With reference to the Americans with Disabilities Act, which in effect generalizes the Rehabilitation Act to the entire economy, see 42 U.S.C. § 12117(a).

As an alternative explanation for the judge's action to a felt lack of judicial power, Doll's counsel suggests that the judge was being "equitable" by "splitting the difference" in recognition that it is far from certain that Doll would have been given the foreman's job in lieu of Stein even if there had been no discrimination. We cannot affirm the judgment on this ground, nowhere articulated in the judge's Rule 52(a) findings and surely not compelled as a matter of law. But this is not to say that we are averse to splitting the difference in cases where proof of injury is inescapably uncertain. In the common law tort domain this is called recovery for the loss of a chance. It is illustrated by cases in which, as a result of a physician's negligent failure to make a correct diagnosis, his patient's cancer is not arrested, and he dies—but he probably would have died anyway. The trier of fact will estimate the probability that the patient would have survived but for the physician's negligence—say it is 25 percent—and will award that percentage of the damages the patient would have

received had it been certain that he would have survived but for the negligence. See, e.g., *Delaney v. Cade,* 255 Kan. 199, 873 P.2d 175, 186–87 (1994); *McKellips v. Saint Francis Hospital, Inc.,* 741 P.2d 467, 475–77 (Okla.1987); Joseph H. King, Jr., "Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences," 90 *Yale L.J.* 1353 (1981); cf. *Herskovits v. Group Health Cooperative,* 99 Wash.2d 609, 664 P.2d 474 (1983); *Hajian v. Holy Family Hospital,* 273 Ill. App.3d 932, 210 Ill.Dec. 156, 652 N.E.2d 1132 (1995).

This basis for an award of damages is not accepted in all jurisdictions, but it is gaining ground and it is in our view basically sound. *Murrey v. United States,* 73 F.3d 1448, 1454 (7th Cir.1996). It is an extension of the routine practice in tort cases involving disabling injuries of discounting lost future earnings by the probability that the plaintiff would have been alive and working in each of the years for which damages are sought. It recognizes the inescapably probabilistic character of many injuries. It is essential in order to avoid undercompensation and thus (in the absence of punitive damages) underdeterrence, though to avoid the opposite evils of overcompensation and overdeterrence it must be applied across the board, that is, to high-probability as well as to low-probability cases. If the patient in our example was entitled to 25 percent of his full damages because he had only a 25 percent chance of survival, he should be entitled to 75 percent of his damages if he had a 75 percent chance of survival—not 100 percent of his damages on the theory that by establishing a 75 percent chance he proved injury by a preponderance of the evidence. He proves injury in *both* cases, but in both cases the injury is merely probabilistic and must be discounted accordingly. To avoid flooding the courts with speculative cases, the lost chance to be actionable should no doubt exceed a *de minimis* threshold, see *Delaney v. Cade, supra,* 873 P.2d at 185–86 (just as a plaintiff should not be denied full recovery because there is a tiny chance that he was not injured by the defendant's conduct after all). But that is a detail which, important as it is for keeping the concept of the lost chance within reasonable bounds, does not qualify the essential soundness of the method.

No one to our knowledge, and certainly not the parties to this case, have suggested that this approach be used to deal with the kind of uncertainty about injury that is graphically presented by this and other employment discrimination cases. Apparently as late as 1991 the theory had been applied only in medical malpractice cases. *Bach v. Trident Steamship Co.,* 920 F.2d 322, 327 (5th Cir.), vacated on other grounds, 500 U.S. 949, 111 S.Ct. 2253, 114 L.Ed.2d 706 (1991). Yet it strikes us as peculiarly appropriate in employment cases involving competitive promotion. In such a case the plaintiff's chances are inherently uncertain because of the competitive setting. Suppose there were five applicants for one job, the employer discriminated against four, all four were equally well qualified, and the fifth got the job. Would all four of the discriminated-against applicants be entitled to back pay, one to the job, and the other three to front pay? Obviously not; yet without the lost-chance concept, which could grant reinstatement to none of the four and 25 percent front pay to each of them, the employer would get off scot-free. This case is less extreme, yet not so much so as to make the traditional dichotomous treatment appropriate. If the issue is posed in either-or terms—either Doll would have gotten the foreman's job or he would not have—then in all likelihood Doll loses, because the case for promoting Stein was very strong. If the issue is instead posed in lost-chance terms—Doll had a chance, though maybe not a very good one, to get the foreman's job, and the government deprived him of that chance and by doing so injured him—then Doll's prospects in litigation are much brighter. If plaintiffs are risk averse, moreover, they will, within limits, prefer a bigger chance of a smaller recovery to a smaller chance of a larger recovery.

The difference between employment discrimination and medical and other forms of personal-injury tort is that the relevant probabilities may be more difficult to compute in the employment setting. It would be hard to pick a number that would reliably estimate the probability of Doll's receiving the pro-

motion but for discrimination. Would it be 5 percent? 10 percent? 40 percent? Who knows? Yet no less uncertainty attends the efforts of triers of fact to fix the percentage of a plaintiff's negligence in a tort case governed, as most tort cases are today, by the rule of comparative negligence. See, e.g., *Wassell v. Adams*, 865 F.2d 849 (7th Cir. 1989), upholding an allocation of 97 percent of the fault to the plaintiff. If the uncertainty is bearable there, why not in an employment case? The unarticulated, unacknowledged difference-splitting that the plaintiff thinks the judge engaged in here does not strike us as a superior approach.

Because of the novelty of the issue and the fact that it has not been briefed, we do not hold that the lost-chance theory is available in employment discrimination cases. We merely commend it to the consideration of bench and bar as a possible method of arriving at more just and equitable results in cases such as this.

 The plaintiff has asked us, if we are minded to reverse, at least to order the government to give him the difference between the pay he received as a parts and tools attendant and the higher pay that he would have received as an electrician before his reinstatement to the latter position. The judge turned down the requested alternative relief on the ground that Doll's administrative claim for it had been untimely. When an appellee wants additional relief beyond what the trial court gave him—when in other words he seeks a modification of the judgment—he must cross-appeal, e.g., *Tredway v. Farley*, 35 F.3d 288, 296 (7th Cir.1994) (per curiam), and Doll did not. *Byron v. Clay*, 867 F.2d 1049, 1051 (7th Cir.1989), states that this principle is applicable even in the case when only conditional relief from the judgment is requested. This is surely correct as a general matter, but *United States v. Bohn*, 959 F.2d 389, 392–94 (2d Cir.1992), and *United States v. Harvey*, 2 F.3d 1318, 1326 (3d Cir.1993), suggest that the requirement of a cross-appeal is a rule of practice rather than a jurisdictional requirement and therefore can be excused when for example the condition under which the appellee would want relief from the judgment is unlikely to be fulfilled and hence to be anticipated. See also 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3904, p. 218 (2d ed. 1992); but see *EF Operating Corp. v. American Buildings*, 993 F.2d 1046, 1049 n. 1 (3d Cir.1993). We need not decide. Doll has offered no excuse for failing to file a cross-appeal and for that matter has presented no reason for concluding that the district court erred in ruling that he had failed to exhaust his administrative remedies. He thus has doubly forfeited the claim, just as the government has forfeited its right to argue that the rule of this circuit requiring clear and convincing evidence that the employee was not hurt by the unlawful discrimination should be changed.

The judgment for back pay is reversed and the case remanded for further consideration of the issue consistent with this opinion. In all other respects the judgment is affirmed. On remand the district judge should continue to apply the clear and convincing rule, but we do not forbid him to apply it to probabilities as distinct from certainties of loss, as explained in this opinion. So if, for example, the government is able to prove by clear and convincing evidence that Doll had no more than a 20 percent chance of being appointed foreman in lieu of Stein (had the Veterans Administration complied with the Rehabilitation Act), it will be open to the district judge to consider whether to award Doll 20 percent of the back pay that the judge awarded him in the first round of this litigation. In view of the novel remedial approach that we have suggested, the judge is free to take additional evidence bearing on it. *Monarch Beverage Co. v. Tyfield Importers, Inc., supra*, 823 F.2d at 1192.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.