In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-2172, 98-2375, 98-2376, 98-2377,
98-2378, 98-2379, 98-2381 & 00-2893

ANTHONY BISHOP, JEFFREY D. HANFORD,
STEVEN J. SWEENEY, LESTER G. ROBERT,
DALE G. VOLLE, JERRY MEYERS, OWEN REEVES,
and AARON BOOKER,

Plaintiffs-Appellants,

v.

TERRANCE W. GAINER, HARRY ORR,
JOHN REDNOUR, DAVID P. SCHIPPERS,
RICHARD T. MITCHELL, NANCY BEASLEY,
FRED E. INBAU, JAMES E. SEIBER,
JAMES REDLICH, and STATE OF ILLINOIS,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 92 C 3293--Harry D. Leinenweber, Judge.

Argued September 6, 2001--Decided DECEMBER 5, 2001

Before COFFEY, KANNE, and EVANS, Circuit
Judges.

EVANS, Circuit Judge.  Filed in the
district court in 1992, this case
precipitated sweeping changes in the
hiring and promotion policies of the
Illinois State Police. So it is somewhat
surprising that the appeal before us
today is brought, not by the ISP, but by
some of the very plaintiffs who were on
the winning side, making the appeal
asappetizing as week-old leftovers in a
refrigerator after a successful
Thanksgiving dinner.

The pot started to boil in 1972 when a
woman named Patricia Cross accused the
ISP and the Illinois State Police Merit
Board of sex discrimination. A settlement
was reached between the Equal Employment
Opportunity Commission and the ISP Merit
Board under which the ISP was required to
maintain nondiscriminatory hiring
practices; the trainee classes for the
ISP had to be composed of at least 25
percent minorities and 7 percent females.
The agreement also required that the ISP

would ensure that no less than 50 percent of those admitted to the training academy would be black, other minorities, or women. The ISP was required to report annually to the EEOC on the race and gender composition of its applicants. Washington v. Walker, 529 F.2d 1062 (7th Cir. 1976). In addition, between 1975 and 1992 there were at least 30 other complaints filed with the EEOC against the ISP alleging discrimination based on sex or race in both hiring and promotion decisions.

Also, in the 1970s the ISP instituted an affirmative action plan in an attempt to increase the numbers of females and minorities in its ranks. As so often seems to be the case, this solution resulted in the opposite predicament-- the present suit by white males, alleging that they were discriminated against by the move to increase the number of females and minorities working for the ISP.

Their "reverse discrimination" case was filed in May 1992 challenging both the hiring and promotion practices of the Illinois State Police. It was litigated under both 42 U.S.C. sec. 1983 and Title VII, 42 U.S.C. sec. 2000e et seq. The practices of the ISP were once again examined for compliance with currently prevailing federal anti-discrimination laws. The district judge made numerous rulings throughout the lawsuit, for instance considering whether certain plaintiffs had filed suit within the applicable statute of limitations. On the merits, he found that the certified class of plaintiffs alleging discrimination in hiring was entitled to summary judgment on its sec. 1983 claim; he found that the ISP's plan violated the Equal Protection Clause because it was not "narrowly tailored to meet a compelling governmental interest." Koske v. Gainer, 1997 WL 619858 (N.D. Ill. Sept. 30, 1997). The Title VII claim proceeded to a bench trial, after which the judge concluded that the defendants violated Title VII by discriminating on the basis of race in their hiring decisions. The notice of judgment in a class action stated:

[T]he members of the class who are not current or retired ISP officers were entitled to have another opportunity to

participate in the Illinois State Police application process without taking an initial entrance examination test. Instead, the members of the class may proceed to the next steps in the application process, which include a physical ability test, psychological evaluation, polygraph examination, background review, and personal interview.

The notice, however, did not include a money award or other individual relief to class members. It stated:

The court is not deciding the issues of back pay, retroactive retirement contribution or retroactive seniority for class members who were not hired or whose hiring date was delayed.

At trial, the claims of individual plaintiffs regarding discrimination in individual promotion decisions were also presented. The court found that there was discrimination behind some of the decisions. As a result, some plaintiffs won; some lost; some of those who won apparently were satisfied with the damages they were awarded; some were not.

This is where we come in. Before us are individual appeals based on various promotion claims and an appeal involving the failure to make a monetary award to the class members on the hiring claims.

Before we get to the issues, however, we must address concerns about our jurisdiction over the claims of certain plaintiffs. After the seven individual plaintiffs alleging discrimination in hiring decisions filed their appeals, it was unclear whether the decisions appealed from were final; we asked the district court to clarify whether it had resolved all of the parties' claims. On March 23, 1999, the district judge found that there was no just reason for delay and said in open court that he would enter judgment under Rule 54(b) on the "claims of the individually named plaintiffs, including the individual claim of class representative Aaron Booker." It is undisputed that this order, which we will construe as a certification pursuant to Rule 54(b), cleared up the jurisdictional issue as to several of the individuals but left questions in the cases of Owen Reeves,

Steven J. Sweeney, and in the class action.

   Like other individual plaintiffs, Reeves and Sweeney filed notices of appeal from nonfinal orders. As we said, we remanded the cases--now consolidated into one appeal-- and a Rule 54 certification was issued. ISP does not dispute that there is jurisdiction over the claims of the appellants who filed notices of appeal within 30 days of nonfinal orders but before the Rule 54(b) certification. For those people, the belated Rule 54(b) certification gave us jurisdiction over those appeals based on the prematurely filed notices of appeal. Local P-171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co., 642 F.2d 1065 (7th Cir. 1981).

   But as to Reeves and Sweeney, the ISP argues that there is no jurisdiction because their notices of appeal were filed more than 30 days from the entry of the nonfinal orders from which they were appealing. The order Reeves appeals from was entered March 27, 1997, and his notice of appeal was filed on May 22, 1998. The order Sweeney appeals from was dated April 23, 1998, and his notice of appeal was filed on May 27, 1998. Despite Reeves' rather cavalier claim that he did, the record shows that neither he nor Sweeney filed a second notice of appeal following the entry of the Rule 54(b) certification.

   Reeves argues that he could not "legally" have filed a notice of appeal in 1997 because the summary judgment order of March 1997 was not final and appealable. He then says that the order did not become appealable until the district court made a Rule 54(b) finding. But he also says of the Rule 54(b) finding that, "after which Reeves timely filed his Notice." Then a few sentences later he says that "[d]efendants apparently argue that Reeves should have appealed from the Rule 54(b) order. This makes no sense."

   What we have trouble making sense of is Reeves' argument. Despite that, after reconstructing his argument, we will allow Reeves' appeal to proceed. Although he does not say so in his appellate brief, Reeves must have thought his right to appeal was triggered by the April 23,

1998, order of the district court, which set back pay and damages for several individual plaintiffs on their promotion claims and included a "Notice of Judgment in Class Action." It is this order, labeled "Revised Final Order," from which the other plaintiffs, also apparently thinking that it was a final judgment, filed their notices of appeal. We questioned whether it was final, and that is why this case now includes a Rule 54(b) certification. If the April 23, 1998, order had been a final judgment, Reeves would have been able to appeal the 1997 order dismissing his claim at that time--that is, when the case was over. 28 U.S.C. sec. 1291. And his appeal would have been timely. As it turned out, the April 1998 order was not a final judgment. But of course the Rule 54 certification, which was proper, made it appealable. So the ISP argues that either Reeves had to file a timely notice of appeal from the Rule 54(b) certification or he should have filed one way back in 1997, within 30 days of the order dismissing him from the lawsuit. The argument is apparently based on the fact that the April 23, 1998, order really has nothing to do with him; his claim had been dismissed the year before. Where does this leave Reeves?

To leave him out in the cold would be setting hypertechnical traps for those who make reasoned judgments about what various court orders mean. Reeves filed a timely appeal when he reasonably believed a final judgment had been entered. It was, after all, labeled "Revised Final Order." Even though it left loose ends on the hiring claims, it ended all aspects of the promotion claims. When it was certified under Rule 54, the promotion claims were fully litigated. Given this unusual set of circumstances-- particularly the fact that Reeves filed a timely notice of appeal from the "Revised Final Order"--his appeal will be allowed to proceed.

Sweeney, on the other hand, acknowledges that his notice of appeal was filed one day late from the order of April 23, 1998, and he does not argue that he filed another notice following the Rule 54(b) certification. Furthermore, he cannot be saved by Appellate Rule 4a(3), which could allow him 14 days from the time the first notice of appeal was filed. See

Young Radiator Co. v. Celotex Corp., 881 F.2d 1408 (7th Cir. 1989). In this case the first notice of appeal was filed on May 6, 1998, which means that Sweeney had the original 30 days in which to file his appeal. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d sec. 3950.7. In addition, a request for an extension of time would have had to be made within 30 days of the expiration of the time limit. Rule 4(a)(6), Federal Rules of Appellate Procedure. Sweeney's appeal is dismissed. He should not despair about this dismissal, however, because our examination of his appeal on the merits convinces us that his chances of success were nonexistent.

The class action presents a different issue. On June 7, 2000, Aaron Booker appealed on behalf of a certified class from an order issued May 8, 2000, nunc pro tunc to April 24, 1998. This order apparently made the class action decisions final and appealable. The ISP claims that, nevertheless, Booker's notice of appeal is untimely because the order of March 23, 1999, found "no just reason for delay and judgment is hereby entered as to the claims of the individually named plaintiffs, including the individual claim of class representative Aaron Booker." This order disposed of Booker's individual claims. The appeal Booker filed is on behalf of the class but, the ISP argues, he is not a person "qualified to bring an appeal" in a class action under Rule 3(c)(3) because he lost his right to appeal personally.

We disagree. The order on which the ISP relies also says "Booker remains as the class representative." At the time of the entry of the order, matters relating to the class action remained in the district court. Once those claims were resolved, Booker as class representative was a person "qualified to bring an appeal."

Having determined our jurisdiction, we will consider the statute of limitations issues raised by Reeves, Jerry Meyers, and Anthony Bishop. Their cases were dismissed based on failure to meet the 2-year statute of limitations for sec.1983 cases in Illinois and/or the 300-day time limit in Title VII. In Reeves' case summary judgment was granted against him, and the other two lost after trial.

In 1986 Reeves was passed over for promotions given to two lower scoring white men and a black man. Two lieutenants told Reeves that the ISP used race-based preferences, and Reeves complained to the ISP Equal Employment Opportunity officer, Andre Parker. Parker told him that there was nothing Reeves could do because the ISP had an obligation to give preferential treatment to minorities but not to Reeves, who ironically is Asian-American, but at the time Asian-Americans were not classified as minorities by the ISP. Reeves' claim is that he did not know Parker had misrepresented his legal rights until after he joined this lawsuit in 1993 (as we said, this case was filed in 1992).

The essence of Reeves' agreement is that he relied on Parker and therefore could not possibly have known that he had a claim because Parker told him he didn't. Reeves tries to compare his situation with cases involving misleading statements made by EEOC officers. The latter have sometimes been the basis for equitable tolling. That is, if the EEOC misleads a claimant, there may be a basis to toll the time period. See Early v. Bankers Life and Casualty Co., 959 F.2d 75 (7th Cir. 1992).

The statute of limitations begins to run on the accrual date, which, in federal question cases, is the date the plaintiff discovers he is injured. Suslick v. Rothschild Securities Corp., 741 F.2d 1000 (7th Cir. 1984). Of course, that does not halt the inquiry. Our cases discuss a number of doctrines which may lead to a lifting of the statute of limitations. We discussed them at length in Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990). One with possible relevance here is equitable estoppel, which applies if a defendant takes active steps to prevent a plaintiff from suing. A defendant, for instance, might tell a potential plaintiff that it will not plead the statute of limitations and thus lull the plaintiff into delaying the filing of his suit. Another doctrine is equitable tolling, which applies if "despite all due diligence [a plaintiff] is unable to obtain vital information bearing on the existence of his claim." At 451. Equitable tolling is not dependent on any conduct by the

defendant.

Reeves has combined the doctrines. He seems to argue that Parker's statement that there was nothing Reeves could do because the ISP was required to give preferential treatment to minorities means that the defendants are equitably estopped from asserting the statute of limitations. Then he likens Parker's statement to misleading statements made by EEOC officials which have been found, in cases like Early, to toll the statute of limitations.

We are far from convinced that a statement by an officer of the employer can easily be likened to a statement by a federal employee. Secondly, the statement Parker made is both a denial of liability and ironically almost an inadvertent acknowledgment of liability. As a denial of liability it cannot constitute a basis for equitable estoppel unless Parker had a fiduciary relationship to the plaintiff. To say otherwise would mean that a statute of limitations would not begin to run until a defendant acknowledged liability, an entirely strange concept. See Singletary v. Continental Illinois Nat'l Bank & Trust Co. of Chicago, 9 F.3d 1236 (7th Cir. 1993). The attempt to make Parker a fiduciary also fails. He was the employment officer for ISP, and perhaps the tendency to rely on his words is somewhat natural, but that does not make him a fiduciary. In sum, as the district judge stated:

[T]he fact that Parker told Reeves that, in essence, defendants used race as a factor in their promotion decisions placed Reeves on immediate notice that he had a claim. Rather than fraudulently conceal, Parker provided a basis for a claim.

The district court was on solid ground when it snuffed out Reeves' suit because it was filed too late. We affirm that decision.

Anthony Bishop says the statute of limitations for both the civil rights claims and his Title VII claim should be equitably tolled or the ISP should be equitable estopped from asserting the defense. He took the sergeants' test in 1984 and ranked second. Three promotions

were made to others (two white men and a black man), so the ISP contends that Bishop had to know that he had been passed over at that time. When Bishop asked about it, a sergeant told him that normally it takes 10 to 12 years before a trooper is promoted. Based on that statement, Bishop claims he was misled and did not know that discrimination was afoot until he learned later that a supervisor must provide reasons in writing if an eligible minority was not promoted, but not if a white person is not promoted. As with Reeves, Bishop is not entitled to tolling of the statute of limitations. It is hard to comprehend how he can expect to have the statute tolled for 8 years on the basis of statements such as these.

Meyers' Title VII case was also dismissed as untimely. He was passed over for promotion on October 1, 1990, and did not file his charge of discrimination until 1992. His claim, different from those of Bishop or Reeves, is that the defendants waived the statute-of-limitations defense. Although the ISP filed an answer asserting a blanket affirmative defense based on the statute of limitations, at trial Meyers says the defense did not specifically raise the issue as to him. Therefore, Meyers says, he did not mount a defense to the statute of limitations claim--that is, he did not try to assert equitable tolling. The defense says Meyers waived his claim of waiver because, in a motion to reconsider the dismissal, he made only perfunctory arguments. We agree, and in addition, Meyers failed to make this specific argument to the district court and has not offered any hint of what evidence he would have used to establish equitable tolling.

On the merits, Jeffrey D. Hanford, Lester G. Robert, and Dale G. Volle appeal the calculation of their back pay. After the judge found for these plaintiffs on liability, he then calculated their back pay by assessing what the chances were that the men would have received a promotion; he awarded back pay proportionally. These plaintiffs object, contending that each of them is entitled to the full amount of the recovery which each requested. As they see it, the judge went wrong because he failed to place the burden of proof on

this issue on the ISP. Apparently, the plaintiffs think that the ISP had to prove, by clear and convincing evidence, that each of them would have failed to get the promotion. Because that did not happen (and we know it did not because each plaintiff did recover some back pay), they apparently think they each can recover full compensation.

They ask too much. In fact, we have said that a full award to each candidate in such a situation would not be simply wrong, it would be obviously wrong. In Doll v. Brown, 75 F.3d 1200 (7th Cir. 1996), we discussed a situation involving multiple candidates for a single promotion and the difficulties it poses over those posed by a one-on-one competition:

Suppose there were five applicants for one job, the employer discriminated against four, all four were equally well qualified, and the fifth got the job. Would all four of the discriminated-against applicants be entitled to back pay, one to the job, and the other three to front pay. Obviously not[.]

At 1206 [emphasis added].

Plaintiffs' argument that the burden of proof was misplaced to their detriment is also unfounded. The fact is that they prevailed on the issue of entitlement to back pay based on discrimination. Apparently, the burden was placed on the ISP, and it failed to meet its burden. In an earlier ruling, the district court quite clearly indicated that the burden was on the ISP, saying, "[I]t is defendants who bear the burden of establishing that plaintiffs would not have been promoted irrespective of any racial or gender discrimination."

What plaintiffs are really complaining about is that they did not each make a full recovery, which, as we shall see, at least in the case of Hanford and Robert, would have caused the ISP to pay double damages. "Obviously" not the right result.

Faced with this dilemma, the district judge looked to what was a theoretical discussion in Doll v. Brown as to the wisdom of applying a "lost-chance theory" in such a situation. The discussion was theoretical, but the invitation to use

the method was clear:

Because of the novelty of the issue and the fact that it has not been briefed, we do not hold that the-lost-chance theory is available in employment discrimination cases. We merely commend it to the consideration of bench and bar as a possible method of arriving at more just and equitable results in cases such as this.

At 1207.

Here, Hanford and Robert were competing against each other--as well as the person who actually was promoted. The judge turned to our decision in Doll and took us up on our invitation to apportion damages under a lost-chance theory, borrowed from tort law, which we said "recognizes the inescapably probabilistic character of many injuries." We analogized by saying that if a patient

was entitled to 25 percent of his full damages because he had only a 25 percent chance of survival, he should be entitled to 75 percent of his damages if he had a 75 percent chance of survival--not 100 percent of his damages on the theory that by establishing a 75 percent chance he proved injury by a preponderance of the evidence.

At 1206. Using the tort approach, the judge proceeded to calculate the plaintiffs' damages by assessing what the chances were that each would have received the promotion he sought. For this promotion, Hanford placed third and Robert fourth on the promotion list. The person who was first received a different promotion and the person who placed second had been out of the particular district for several years, and for that reason the judge reasoned that his chances of getting the promotion would be reduced to 25 percent. Then the judge assessed that Hanford had a 45 percent chance and Robert had a 30 percent chance to receive the promotion. The other appellant, Volle, was competing for a promotion with two other white males who placed higher than he did on the list, so his chances were assessed at 15 percent.

The approach obviously involves more art than science. But as we said in Doll, that is true in all comparative

negligence calculations as well. It strikes us that in this particular situation, it was the likeliest way to arrive at a just result. We think the judge (Judge Harry Leinenweber here) did a wonderful job of cutting this Gordian knot. We have examined the evidence and find no reason to disturb the thoughtful calculations he has made and the result they have produced.

We now turn to the hiring claims and Booker's appeal from the judge's failure to make back pay awards to the plaintiff class members and his striking of certain telephone charges from the award of attorneys fees and costs.

The appeal from the class-action hiring case appears deceptively simply. Booker frames the issue as "whether the court wrongly denied a remedy, including back pay, to class members with hiring claims, after finding liability in their favor." Lurking within that seemingly clear issue is a swamp of confusion. We hardly know how to begin.

Everyone, including Judge Leinenweber, seems to have lost track of what exactly happened over the years this claim was pending. For this, the parties bear the blame. The argument the class makes now is that because they won on liability, they must receive back pay. For this proposition they rely on Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975). They did not receive back pay; therefore, the case must be remanded for a back pay award. The reader may wonder where we see confusion in that argument.

We will explain by pointing out that this class was certified under Rule 23(b)(2), which provides that certification is appropriate if

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]
In the class certification order of July 14, 1994, the court said:

Class actions under Rule 23(b)(2) are primarily designed for injunctive and declaratory relief. Fontana v. Elrod, 826 F.2d 729, 732 (7th Cir. 1987). When

employed to seek injunctive and declaratory relief, Rule 23 requires neither notice nor an opportunity to "opt out." However, according to Seventh Circuit, when monetary damages are sought in a (b)(2) class action, "due process does require notice before the individual monetary claims of absent class members may be barred."

Thus, the Court finds that with respect to the class hiring claims, plaintiffs need not give notice nor an opportunity to "opt out" to potential class members. With regard to plaintiffs' claims for injunctive relief, the named plaintiffs, members of the class and defendant will be precluded from re-litigating certain issues in an action for damages. Premier Elec. Constr. Co. v. N.E.C.A., Inc., 814 F.2d 358, 366 (7th Cir. 1987). However, unless notice and an opportunity to "opt out" is given to class members, only the parties to this action will be bound by the Court's determination of damages.

From time to time, however, everyone lost sight of this order. Throughout the lawsuit, the parties discuss notice and whether class members must be given a chance to opt out. It was discussed in the district court following the entry of a January 1998 order. It is discussed in this court.

Since the time of the certification in this case, we have said in another case that if money damages, which are more than incidental to equitable relief, are sought in a particular case, certification should be made under Rule 23(b)(3), which provides for notice to class members and provides them with an opportunity to opt out of the suit. We left it to the district court to decide whether certification is ever proper under 23(b)(2) when the class seeks money damages, as opposed to "equitable monetary relief such as back pay." Jefferson v. Ingersoll Int'l Inc., 195 F.3d 894, 899 (7th Cir. 1999). Although he did not have the benefit of our decision in Jefferson, in the class certification order Judge Leinenweber showed a keen appreciation for the differences between the two kinds of class actions, and clearly this was a class certification seeking equitable relief. This is not quite the end of our inquiry because back pay is equitable

relief.

Under Jefferson, back pay might arguably be contemplated by a Rule 24(b)(2) class certification order, but damages could not be. Part of the confusion in this case arises because of careless use of terminology. It is not clear what the parties and the judge mean by "damages." At times Booker refers to "back pay," at other times to damages, and at other times to "monetary relief." In his brief, he says the district court wrongly failed to fashion class-wise relief "including back pay, retroactive retirement contribution, and retroactive seniority, and other relief available under Title VII." In the next paragraph, he says the court wrongly failed to order notice that "its failure to award damages" was not binding on absent class members. Nevertheless, as early as the class certification order in 1994, as class representative, Booker should have known that a money award--whatever it was being called--was not being contemplated under the class certification order. In the order, the judge at least implicitly rules out both "individual monetary claims" and damages. That limitation is repeated in a number of confusing ways in a number of later orders. When the district court initially denied monetary relief to the class as speculative, Booker urged reconsideration, noting that the court had previously ruled it would not determine damages for unnamed class members and suggested that the court limit its denial of back pay to Booker. That is what the court did in an order in March 1998. In this context, it could not have come as a surprise that the court was not planning to order any monetary relief for the 5,000 class members whose claims went back to 1975. We also note that it is now too late for Booker to suddenly adopt precision in language and argue that the class certification order meant that compensatory and punitive damages would not be considered, but that back pay might be. It was clear--at least until the very end of the case--that no monetary class-wide relief was contemplated.

Despite all this, relying on Albemarle, Booker claims that because the court found liability, the class must receive back pay. Even were it not for the nature of the class certification in this case,

the issue is not that clear-cut. Albemarle allows back pay to be denied if the denial does not frustrate the central purpose of Title VII. In this case, the class won a victory. The court found that the class was discriminated against in the first of seven steps required for employment with the ISP--the written examination. The court ordered that the class members should be allowed to reapply and should be deemed to have passed the written entrance examination. They were to be allowed to proceed to the next steps in the employment process. The court recognized that their success in the next steps was not certain. The class members, in other words, did not win the race. They won the right to jump the first hurdle. We note again that there were 5,000 class members with claims going back to 1975. It is not even remotely likely that all would have been hired. Determining back pay awards for the class would have been a ludicrous task. Given that, and that the judge had made quite clear from the outset that he was not going to consider monetary awards for the unnamed class members, and that what the class won was a free pass on one of seven steps in the process, refraining from considering back pay awards was not a violation of the central purpose of Title VII.

The district court's discussion of named-plaintiff Booker's claim for damages shows the problems:

With regard to monetary relief to Booker, the class representative, the evidence showed that he was very far down on the list of white males who passed the written exam. Had the ISP administered the list in a non-discriminatory manner his chance of appointment was still highly speculative, even considering the white hiring shortfall, because white males who scored higher would presumable have done better on the balance of the application process.

It is curious that Booker did not appeal this order but rather claims that back pay should somehow be awarded to others.

The class also argues that the denial of monetary relief leaves them with no victory at all because the ISP has eliminated the examination for all applicants. It is a strange argument. If

the class was of the opinion that the misuse of examination results led to discrimination, it would seem that eliminating that step would be, as Martha Stewart might say, a good thing. Further, it would also seem that the use of new requirements, such as new education requirements, would be considered a class-wide victory designed to result in a better force. That does not seem to be the way the class sees it.

All of this does not quite get us out of the quagmire. The orders regarding the class are at least arguably contradictory. Booker sums it up by saying that the January 15, 1998, order denied back pay to the class. Then the order of March 18, 1998, amended the January 15 order and limited the denial of relief to the named class member-- Booker. What the order says is that "[t]he decision of the court denying damages is limited only to the named class members." Then on April 23, 1998, in the notice for the class, the court stated that it was not deciding the back pay issue and that if a plaintiff wished to claim back pay he must seek his own attorney. In response to our order seeking clarification of whether there was a final judgment in this case, on March 23, 1999, the judge declared that he had not yet resolved the issue of monetary damages. But on May 8, 2000, the court stated it had resolved the issue of back pay. Later in the same order, he said the class members were not entitled to any "promotion, back pay or other forms of monetary or injunctive relief . . . ."

We could, of course, send this mess back to the district court. But fortunately that won't be necessary; the record we have reviewed gives us a solid basis for clearing things up. The class certification order and the statements made about it in this litigation make clear that the class was not certified for the purposes of awards of back pay or any other monetary relief. Under the circumstances of this case, we find that the refusal to consider back pay awards in the context of the class action does not violate the principles of Title VII. Therefore, we vacate any statement or order which indicates that the members of the plaintiff class other than Booker are not entitled to back pay or other

damages. At the same time, we note that the victory of class members on step one leaves them several steps away from any showing that they are entitled to back pay. Except as to Booker, the issue simply was not litigated in the district court in any meaningful way. We take absolutely no position as to whether any individual class member retains a valid back pay claim; we only note that no order in this case prevents a claim.

Finally, the class seeks to overturn the denial of part of their request for attorneys fees. The issue of the proper fees is reviewed for an abuse of discretion. The district court awarded plaintiffs over $238,000 in attorneys fees and costs. He denied a request for additional fees arising out of hundreds of hours of long-distance telephone calls. He said he could not assess the reasonableness of the request because counsel refused to described in general terms the substance of the calls. We fail to see an abuse of discretion in this decision.

The appeal of Steven Sweeney is dismissed. With the scope of the judgment in the class action as modified herein, the judgment of the district court is AFFIRMED.